# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2021-13T2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

ANTWAIN T. WATERS,

    Defendant-Respondent.

_____

**APPROVED FOR PUBLICATION**

**January 30, 2015**

**APPELLATE DIVISION**

Submitted September 8, 2014 — Decided January 30, 2015

Before Judges Sabatino, Simonelli and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 13-02-00301.

John L. Molinelli, Bergen County Prosecutor, attorney for appellant (Joseph W. Torre, Assistant Prosecutor, of counsel and on the brief).

Frank T. Luciano, P.C., attorneys for respondent (Mr. Luciano, on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Defendant Antwain T. Waters was denied Pretrial Intervention (PTI). That denial was affirmed by a Law Division judge. Defendant pled guilty and was scheduled for sentencing, but a second Law Division judge granted PTI. The State appeals the

order granting PTI. We reverse that order and remand for sentencing.

## I.

The following facts are set forth in the letter recommending against PTI by the Criminal Division Manager serving as PTI Director. On September 7, 2012, a Mahwah police officer observed defendant driving a pickup, bearing Georgia tags, with tail lights that were not functioning. After the vehicle exited Interstate 287, the officer conducted a motor vehicle stop, and asked defendant for license, registration, and proof of insurance. Defendant only produced his Georgia license. Asked again for the registration and insurance cards, defendant looked at the glove compartment, hesitated, and then opened it. The officer saw a loaded handgun magazine, which defendant immediately tried to move under the center armrest.

The officer asked if there was a weapon in the vehicle. Defendant conceded he had a weapon in a storage compartment under the front seat. After arresting defendant and securing his passenger, the officer found a 9mm semi-automatic handgun in a holster in the storage compartment, and a magazine loaded with eleven hollow-nose bullets near the center armrest. Under the front seat, the officer also found a case for the handgun and a box of shotgun shells. Defendant admitted the handgun belonged

2

to him. He claimed to have a Georgia firearms license, but it had expired fifteen months earlier, on June 6, 2011.

The grand jury indicted defendant for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), fourth-degree possession of a prohibited large-capacity ammunition magazine, N.J.S.A. 2C:39-3(j), and fourth-degree possession of prohibited hollow-nose bullets, N.J.S.A. 2C:39-3(f)(1). Under the Graves Act, N.J.S.A. 2C:43-6(c), defendant faced a mandatory minimum sentence of thirty-six months.

Defendant applied for PTI, and the prosecutor objected. The PTI Director issued a letter denying defendant's application because of the rebuttable presumption against PTI for a second-degree charge. See Pressler & Verniero, Current N.J. Court Rules Guideline 3(i) to R. 3:28 (2015). Defendant appealed to a Criminal Part judge (the first judge). The first judge initially declined to make a determination because the PTI denial letter provided insufficient information, and directed the matter back to the PTI Director to make specific findings of fact and to consider documents defendant had submitted to the first judge.

After reconsidering defendant's application, the PTI Director issued a much more detailed letter addressing the degree and nature of defendant's offense, his prior criminal and probation history, and the effect of his residence on supervision. The PTI Director

3

again denied PTI, finding the "early rehabilitative services and the minimal supervision offered by the PTI Program would not best serve the interests of the State of New Jersey."

Defendant again appealed to the first judge. After hearing argument, the first judge found that "defendant failed to prove that the prosecutor's rejection of his PTI application was based on a patent or gross abuse of discretion. Nor was it based upon the prosecutor's failure to consider relevant factors."

Defendant later pled guilty to second-degree unlawful possession of a handgun. He admitted that he knew the handgun was in his possession, even though he "did not have a carry permit issued by the State of New Jersey or any other state," and that his possession of the handgun was unlawful. Under the plea agreement, the prosecutor agreed that the mandatory period of incarceration and presumption of incarceration would be waived, that the prosecutor would recommend 364 days in county jail as a condition of probation, and that defendant was permitted to argue for a sentence of probation.

Defendant appeared for sentencing before a second Criminal Part judge (the second judge), who instead reviewed the reasons given by the PTI Director for denying PTI. On December 16, 2013, the second judge issued a written opinion and order stating that the matter was before the second judge on defendant's appeal of

4

the denial of PTI and that "defendant's motion to appeal was inadvertently scheduled before [the first judge]." Without any further reference to the first judge's decision, the second judge granted defendant's motion for PTI. The State appeals.

## II.

The PTI program is governed by N.J.S.A. 2C:43-12 to -22 (the Act), Rule 3:28, and the Guidelines for Operation of Pretrial Intervention in New Jersey (Guidelines), reprinted in Pressler & Verniero, supra, Guideline to Rule 3:28. They establish the procedures for reviewing PTI applications.

It is unclear to us why this PTI appeal was decided by the first judge, and then decided again by the second judge. The second judge stated that the PTI appeal should have been filed before her as the presiding judge under Rule 3:28(h). However, that rule states that "[a]n appeal by the defendant shall be made on motion to the Presiding Judge of the Criminal Division or to the judge to whom the case has been assigned[.]" Ibid.[1] We need not opine which judge should have initially been assigned defendant's PTI appeal. Regardless, nothing in the Act or the

---

[1] Moreover, the "Assignment Judge shall designate a judge or judges to act on all matters pertaining to pretrial intervention programs." R. 3:28(a). Appeals from the denial of PTI may be decided by a "designated judge." N.J.S.A. 2C:43-12(f); R. 3:28(f). We trust that the assignment judge will clarify which judge or judges within the vicinage are designated to decide such PTI appeals, so a similar situation does not arise in the future.

rules provide that a judge's decision of a PTI appeal can be appealed to or reversed by another Criminal Part judge. Rather, Rule 3:28(g) provides that a Criminal Part judge's denial of a PTI appeal is challengeable by appeal to this court after a judgment of conviction. Further, nothing suggests that a PTI appeal decided by one judge can be decided anew by a second judge.[2] Such duplicative and, in this case, conflicting rulings by different Criminal Part judges are not contemplated by the Act or the rules.

Moreover, Rule 3:28(h) "does not contemplate further proceedings [appealing the denial of PTI] at the trial level after a guilty plea is entered." State v. Moraes-Pena, 386 N.J. Super. 569, 578 (App. Div.), certif. denied, 188 N.J. 492 (2006). Under that rule, a PTI appeal "should be determined either before or at the pretrial conference," Pressler & Verniero, supra, Guideline 6 to R. 3:28, "and, in any event, before a [guilty] plea or verdict." Moraes-Pena, supra, 386 N.J. Super. at 578-79. "A PTI appeal should not be, and is not, a collateral attack on a guilty plea." Ibid.

---

[2] This case does not involve a defendant "seeking reconsideration of a decision denying a PTI application" by the same judge, or by another judge if that judge is unavailable. See State v. Halm, 319 N.J. Super. 569, 579 (App. Div.), certif. denied, 162 N.J. 131 (1999). In any case, our Supreme Court refused to follow Halm to the extent it suggests that PTI can be granted after a guilty verdict. State v. Bell, 217 N.J. 336, 350 n.5 (2014).

As our Supreme Court recently emphasized, "[n]one of the laudatory purposes of pretrial intervention are fostered by" the grant of PTI after conviction. Bell, supra, 217 N.J. at 348. "Such a procedure not only thwarts the purpose of this particular diversionary program because the defendant has been found guilty of a criminal offense but also nullifies a valid verdict of guilt." Ibid. "Moreover, permitting a defendant found guilty of a criminal offense to seek admission to PTI transforms an effective pretrial diversionary program into an alternative sentencing option. Such action stands the PTI program on its head," and is antithetical to "the very nature of PTI as a pretrial diversionary program." Id. at 348-49. Although such concerns are most serious when a trial court grants a PTI appeal after trial as in Bell, such concerns are also raised when a trial court grants a PTI appeal after a valid guilty plea. Moraes-Pena, supra, 386 N.J. Super. at 578-79; see State v. Frangione, 369 N.J. Super. 258, 260-61 (App. Div. 2004). Therefore, the granting of the PTI appeal by a second judge after a valid guilty plea was inappropriate.[3]

_____

[3] We distinguish this case from a situation where a guilty plea has been withdrawn with the court's permission before the entry of judgment of conviction, as provided in State v. Slater, 198 N.J. 145, 156-62 (2009). Upon a withdrawal of the plea, the defendant is restored to pretrial status. Moreover, a defendant's assertion of "a colorable claim of innocence," or "the nature and strength of defendant's reasons for withdrawal," id. at 157-58, may elicit facts favorable to the defendant which affect the

7

In any event, the prosecutor acted within his discretion in denying PTI. Deciding whether to permit diversion to PTI "is a quintessentially prosecutorial function." State v. Wallace, 146 N.J. 576, 582 (1996). "'Prosecutorial discretion in this context is critical for two reasons. First, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options.'" State v. Nwobu, 139 N.J. 236, 246 (1995) (quoting State v. Kraft, 265 N.J. Super. 106, 111 (App. Div. 1993)). Accordingly, "prosecutors are granted broad discretion to determine if a defendant should be diverted" to PTI instead of being prosecuted. State v. K.S., __ N.J. __, __ (2015) (slip op. at 10); see State v. Negran, 178 N.J. 73, 82 (2003) (courts must "allow prosecutors wide latitude").

"Thus, the scope of review is severely limited." Negran, supra, 178 N.J. at 82. Reviewing courts must accord the prosecutor "'extreme deference.'" Nwobu, supra, 139 N.J. at 246 (quoting Kraft, supra, 265 N.J. Super. at 112). "In order to overturn a prosecutor's rejection, a defendant must 'clearly and convincingly establish that the prosecutor's decision constitutes a patent and

prosecutor's PTI calculus. We do not read Bell as precluding a defendant from applying or reapplying for admission into PTI after a plea is withdrawn under Slater.

gross abuse of discretion.'" State v. Watkins, 193 N.J. 507, 520 (2008). "[I]nterference by reviewing courts is reserved for those cases where needed 'to check [] the most egregious examples of injustice and unfairness.'" State v. Lee, 437 N.J. Super. 555, 563 (App. Div. 2014) (quoting Negran, supra, 178 N.J. at 82 (internal quotation marks omitted)).

We must apply the same standard as the trial court. Therefore, we review the second judge's reversal of the prosecutor's decision de novo. We must hew to that standard of review.

The eligibility criteria for the PTI Program are primarily set forth in Guideline 3 and in N.J.S.A. 2C:43-12(e) of the Act. As evidenced by the prosecutor's brief and argument before the first judge, the prosecutor primarily relied on (A) the presumption against PTI for defendants charged with second-degree offenses under Guideline 3(i); (B) the nature of the offense and facts of the case under Guideline 3(i) and N.J.S.A. 2C:43-12(e)(1)-(2); and (C) the public need for prosecution of such cases, N.J.S.A. 2C:43-12(e)(14). The prosecutor also noted (D) the effect of defendant's residence in Georgia on supervision under Guideline 3(b). We consider each in turn.

9

A.

Guideline 3(i) provides that "[a] defendant charged with a first or second degree offense . . . should ordinarily not be considered for enrollment in a PTI program except on joint application by the defendant and the prosecutor." Pressler & Verniero, supra, Guideline 3(i) to R. 3:28. This provision represents a "decision to prevent serious offenders from avoiding prosecution in ordinary circumstances," and creates "a presumption against diversion." State v. Caliquiri, 158 N.J. 28, 42 (1999); see Watkins, supra, 193 N.J. at 523; Pressler & Verniero, supra, Official Comment on Guideline 3.

A defendant may rebut the presumption by "showing compelling reasons justifying the applicant's admission and establishing that a decision against enrollment would be arbitrary and unreasonable." Pressler & Verniero, supra, Guideline 3(i) to R. 3:28. "[A] defendant must demonstrate something extraordinary or unusual," not merely "that the accused is a first-time offender and has admitted or accepted responsibility for the crime." Nwobu, supra, 139 N.J. at 252. If a defendant "fails to rebut the presumption against diversion," then "[r]ejection based solely on the nature of the offense is appropriate." Caliquiri, supra, 158 N.J. at 43.

10

Here, the second judge concluded that the prosecutor "based [his] decision on a per se rule to exclude defendants who are charged with Graves Act offenses," and "overly emphasized the ineligibility of defendant into PTI due to his second degree charge." To the contrary, the prosecutor appropriately relied on Guideline 3(i)'s presumption while recognizing that it could be rebutted. The prosecutor acknowledged defendant had no prior involvement in the criminal justice system, had a legitimate business, and was the primary parent of a twelve-year-old child. The prosecutor reviewed and considered all the papers submitted on defendant's behalf, including letters from family members.

The prosecutor concluded that the facts "certainly support good reasons why defendant should not receive the mandatory prison term associated with his charges but they are not extraordinary or unusual as to overcome the presumption against PTI," and were not "compelling enough to get into PTI." This was not a patent and gross abuse of discretion. See State v. Brooks, 175 N.J. 215, 230 (2002) (upholding the denial of PTI even though "defendant has presented numerous letters attesting to his good character, and has asserted other facts in mitigation as part of his application").

The second judge nonetheless concluded the PTI Director and the prosecutor overlooked defendant's submissions. The second

11

judge cited the PTI Director's statement that "[i]t was not until the PTI appeal was filed that this office came into possession of the material." However, the PTI Director was referencing defendant's first PTI appeal, in which defendant submitted materials to the first judge that had not been submitted to the PTI Director. After the first judge remanded the matter to the PTI Director, the PTI Director explicitly "reviewed [the] additional material submitted at the time of the [first] PTI appeal," and found that "[t]he additional material submitted by the defendant fails to rise to the level of rebutting the presumption against enrollment." Regardless, it is the prosecutor whose decision is being reviewed, and the prosecutor considered defendant's materials. Thus, the second judge erred in concluding that "defendant's situation could not have been fully assessed on an individualized basis."

B.

In addition to the presumption against PTI, the prosecutor cited the nature of the offense and the facts of the case. He noted that, although defendant lawfully purchased the gun in Georgia, defendant's Georgia firearms license expired fifteen months before he brought the firearm into New Jersey. The prosecutor believed that the gun was not being carried legally in New Jersey or Georgia, and that defendant had not offered a

12

legitimate reason for carrying the gun. The prosecutor noted that defendant also illegally possessed a large-capacity magazine with hollow-nose bullets, and that keeping the gun and ammunition in the passenger compartment of the vehicle posed a safety issue.

Based on an internet printout supplied by defendant, the second judge found that "the manner in which the defendant maintained the gun and ammunition magazine in his vehicle was consistent with the laws of Georgia." However, defendant failed to show that carrying the firearm was legal under Georgia law.[4] The handgun was not in its case, as required under Georgia Code Annotated § 16-11-126(c) (2014), which states: "Any person who is not prohibited by law from possessing a handgun or long gun may have or carry any handgun provided that it is enclosed in a case and unloaded." See Hertz v. Bennett, 751 S.E.2d 90, 94 n.3 (Ga. 2013).

Another Georgia provision states that "[a]ny person who is not prohibited by law from possessing a handgun or long gun who is eligible for a weapons carry license may transport a handgun or long gun in any private passenger motor vehicle." Ga. Code Ann. § 16-11-126(d) (2014). However, it is not clear that

_____

[4] Defendant submitted a certification from a Georgia attorney that the laws of Georgia do not prohibit possessing hollow-nose bullets or large-capacity magazines, but the certification conspicuously did not address whether defendant's carrying of the handgun was legal under Georgia law.

13

defendant is eligible for a weapons carry license. A "person who has been convicted of any misdemeanor involving the use or possession of a controlled substance" may be ineligible for a weapons carry license. Ga. Code Ann. § 16-11-129(b)(2)(I) (2014). Defendant pled guilty to a misdemeanor of operating a vehicle under the influence of alcohol and drugs.

Even if defendant could carry or transport a handgun in Georgia without a valid weapons carry license, it is undisputed that he could not do so legally in New Jersey under N.J.S.A. 2C:39-5(b). "New Jersey need not observe the lowest common denominator of gun control among the various states." In re Two Seized Firearms, 127 N.J. 84, 86, cert. denied, 506 U.S. 823, 113 S. Ct. 75, 121 L. Ed. 2d 40 (1992). "[A] non-resident gun owner may [not] avoid the sanctions of New Jersey's gun-control laws on the basis that possession of the weapon was legal in the owner's state of residence and that the owner was merely transporting weapons through New Jersey," even where he claims to lack "criminal intent and knowledge that New Jersey would regard the possession as illegal." Id. at 85-86.

Nor was defendant in compliance with federal law. Under 18 U.S.C.A. § 926A, a person is only permitted

> to transport a firearm for any lawful purpose
> from any place where he may lawfully possess
> and carry such firearm to any other place
> where he may lawfully possess and carry such

14

firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

Contrary to § 926A, defendant had both the handgun and ammunition readily accessible in the passenger compartment of the pickup, and neither the gun nor the ammunition was in a locked container. See State v. Reininger, 430 N.J. Super. 517, 531 (App. Div.), certif. denied, 216 N.J. 367 (2013), cert. denied, __ U.S. __, 134 S. Ct. 1947, 188 L. Ed. 2d 962 (2014). He thus failed to meet § 926A's "sensible accommodation of each state's right to ensure the safety, health, and welfare of its own citizens." Two Seized Firearms, supra, 127 N.J. at 90-91.

In addition to unlawfully possessing a handgun, defendant also possessed a large-capacity ammunition magazine containing hollow-nose bullets. Such magazines and bullets are particularly dangerous items prohibited in New Jersey. See N.J.S.A. 2C:39-3(f)(1), (j).[5] Defendant had the handgun under the driver's seat

_____

[5] A large-capacity magazine "is capable of holding more than 15 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm," such as defendant's 9mm pistol. N.J.S.A. 2C:39-1(y). Hollow-nose bullets, also known as hollow-

15

and the large-capacity magazine with hollow-nose bullets in the glove compartment, both unsecured in the passenger compartment and readily accessible to the vehicle's occupants.  As the prosecutor noted, this posed an obvious safety risk to the officers.  The second judge's finding that the gun and ammunition were in "distant locations severely lowering the risk of harm posed to the officers" did not reflect the appropriate deference to the prosecutor's reasonable view of the facts.

Although defendant submitted a certification that he lawfully purchased the handgun, large-capacity magazine, and hollow-nose bullets in Georgia, he notably did not certify he was unaware that carrying them into New Jersey is illegal.  Indeed, the facts suggest that he was aware of that illegality: he initially did not disclose to the officers that he had a gun; he hesitated to open the glove compartment; he attempted to hide the large-capacity magazine; and only after that attempt failed, and in response to direct questioning, did he admit he had a gun.

The second judge cited a letter from defendant's passenger, which stated that they were driving from a client's location in

---

point or dum-dum bullets, are "designed to expand upon entering a target," Model Jury Charge (Criminal), "Possession of Prohibited Weapons and Devices" (2013), and thus "to inflict the maximum amount of injury," Lambert v. State, 249 N.E.2d 502, 508 (Ind. 1969); see United States v. Philiposian, 267 F.3d 214, 215 (3d Cir. 2001).

16

Pennsylvania to another client's location in New York. However, defendant failed to show that he had any reason to carry on that journey the handgun, let alone the hollow-nose bullets and large-capacity magazine. Nor did he show he could "lawfully possess and carry such firearm" in either of those states. 18 U.S.C.A. § 926A; see 18 Pa. Cons. Stat. § 6106(a) (2014); N.Y. Penal Law § 265.01(1) (Consol. 2014).

## C.

As the prosecutor asserted, New Jersey has a strong interest in enforcing its gun laws to deter the illegal handling and transportation of firearms. As our Supreme Court stated in Two Seized Firearms, supra, 127 N.J. at 89: "As one of the most heavily traveled corridor states in the nation, New Jersey has a particularly compelling interest in regulating the carriage of weapons within its borders." Carrying "handguns in one's car or on one's person along the highways is, apart from certain exemptions, 'clearly forbidden unless the person carrying the handgun has a permit issued in accordance with [N.J.S.A. 2C:58-4].'" Id. at 87-88 (quoting State v. Hatch, 64 N.J. 179, 186 (1973)). There is "'nothing in the statute which suggests any flexibility or any intent to exclude nonresidents within or passing through New Jersey from the strict permit requirement.'" Id. at 88 (quoting Hatch, supra, 64 N.J. at 186).

17

Since the 1992 decision in Two Seized Firearms, our Legislature has shown increasing concern about the unlawful possession of handguns.  The Legislature elevated it to a second-degree offense and imposed a thirty-six-month minimum term.  L. 2007, c. 284, § 1, eff. Jan. 13, 2008; L. 2007, c. 341, § 5, eff. Jan. 13, 2008.  The Legislature subsequently raised the minimum term to forty-two months.  L. 2013, c. 113, § 2, eff. Aug. 8, 2013.  See N.J.S.A. 2C:39-5(b), 2C:43-6(c).

Moreover, "policy determinations, such as which offenses to aggressively prosecute, fall within the domain of the prosecutor, not the judiciary."  Kraft, supra, 265 N.J. Super. at 116.  "[W]e cannot say that it was '"arbitrary, irrational or otherwise an abuse of discretion" for the prosecutor to have assigned as much weight to the gravity of the offense as [he] apparently did in this case.'"  Moraes-Pena, supra, 386 N.J. Super. at 582 (quoting Wallace, supra, 146 N.J. at 589).

D.

The Guidelines state that the prosecutor shall consider the "[r]esidence" of the defendant as a relevant circumstance. Pressler & Verniero, supra, Guideline 3(b) to R. 3:28.  "Only those defendants are ineligible who reside such distances from New Jersey as to bar effective counseling or supervisory procedures." Ibid.  Residents of other states may participate in out-of-state

18

programs "with the approval of the prosecuting attorney." Pressler & Verniero, supra, Official Comment on Guideline 3.

Defendant argued that he could participate in Georgia's First Offender program, but that program appears to relate only to defendants convicted in Georgia. Ga. Code Ann. § 42-8-60 (2014). He also cited the Interstate Compact for Adult Offender Supervision, codified at N.J.S.A. 2A:168-26 to -39. However, the Rules of the Interstate Commission for Adult Offender Supervision (ICAOS) state that "[p]ersons subject to supervision pursuant to a pre-trial release program, bail, or similar program are not eligible for transfer under the terms and conditions of this compact." ICAOS Rule 2.106.[6] Thus, persons on pre-trial intervention are ineligible.[7] Therefore, defendant is ineligible for transfer of supervision under ICAOS Rule 3.101, and New Jersey cannot compel Georgia to supervise him under the Interstate Compact, as the prosecutor pointed out.

The second judge asserted that defendant could be supervised by a New Jersey probation officer by phone or by making scheduled

---

[6] ICAOS, Step-By-Step ICAOS Rules (eff. March 1, 2014), available at http://www.interstatecompact.org/Legal/RulesStepbyStep/Chapter2/Rule2106.aspx. The PTI Director referenced ICAOS Rule 2.106 but miscited it as ICAOS Rule 2.107.

[7] ICAOS, Eligible Offenders Must Transfer to Relocate (updated Feb. 2, 2014), available at http://www.interstatecompact.org/Portals/0/library/training/charts/Eligbility.pdf.

visits to New Jersey. However, the PTI Director and prosecutor could properly conclude that defendant, a Georgia resident, was at such a distance from New Jersey "as to bar effective counseling or supervisory procedures." Pressler & Verniero, supra, Guideline 3(b) to R. 3:28. Given this "rational basis" for denying PTI, there is no violation of defendant's right to equal protection. See State v. Senno, 79 N.J. 216, 227-31 (1979).

## IV.

The second judge also ruled that the PTI Director and prosecutor failed to adequately consider all of the relevant factors. However, a court must "presume that a prosecutor considered all relevant factors, absent a demonstration by the defendant to the contrary." Wallace, supra, 146 N.J. at 584. "This presumption makes it very difficult to reverse a prosecutor's decision on that basis." Nwobu, supra, 139 N.J. at 249. Defendant made no such demonstration here.

The second judge faulted the prosecutor for not explicitly discussing the absence of certain factors, for example, whether "the crime is of an assaultive or violent nature," N.J.S.A. 2C:43-12(e)(10). However, the prosecutor need not "provide a defendant with a detailed report outlining every step taken en route to his decision." State v. Sutton, 80 N.J. 110, 117 (1979). "At a minimum, the prosecutor 'should note the factors present in

20

defendant's background or the offense purportedly committed which led [the prosecutor] to conclude that admission should be denied.'" Nwobu, supra, 139 N.J. at 249 (quoting Sutton, supra, 80 N.J. at 117). Here, the prosecutor met that minimum, stating the reasons for rejecting PTI "with 'sufficient specificity so that defendant has a meaningful opportunity to demonstrate that they are unfounded.'" Ibid. The prosecutor also considered the mitigating factors advanced by defendant.

The second judge believed that the State failed to assign the appropriate weight to the factors. However, the Legislature "clearly intended to leave the weighing process to the prosecutor." Wallace, supra, 146 N.J. at 585-86. Rule 3:28 and the Guidelines similarly leave it to "the prosecutor to weigh the various factors and to reach a determination." Wallace, supra, 146 N.J. at 586. Here, "the prosecutor weighed the relevant and material factors and reached a conclusion that defendant was not an appropriate candidate for PTI." Id. at 589. Nonetheless, the second judge "performed a similar weighing process and reached a contrary conclusion." Ibid. However, a court can "not evaluate a PTI application 'as if it [stands] in the shoes of the prosecutor.'" State v. Hoffman, 399 N.J. Super. 207, 216 (App. Div. 2008) (quoting Wallace, supra, 146 N.J. at 589). The second judge's written opinion, while thorough, "performed what was, in essence,

21

a de novo review of defendant's application," and "afforded little, if any, deference to the decision of the Prosecutor.  This was improper."  Kraft, supra, 265 N.J. Super. at 113.

The second judge properly criticized the PTI Director for considering defendant's five arrests for misdemeanor motor vehicle violations in Georgia and Kentucky, his pleas of guilty and nolo contendere to two such violations, and his resulting twelve-month probation.  "[B]ecause motor vehicle violations are not 'crimes,' . . . defendant's past driving infractions do not support his disqualification from PTI admission pursuant to N.J.S.A. 2C:43-12e(9)."  Negran, supra, 178 N.J. at 83; accord State v. McKeon, 385 N.J. Super. 559, 573 (App. Div. 2006).  Moreover, "prior dismissed charges may not be considered for any purpose," unless undisputed facts, or facts found at a hearing, "support the truth of the allegations in defendant's dismissed . . . charges." K.S., supra, slip op. at 2, 10.  However, as the prosecutor expressly stated, the prosecutor did "not rely on any of [defendant's] motor vehicle arrests [or violations] or his probation as a reason for not giving him PTI, even though the PTI Director did."  Thus, this was not a basis to overturn the decision of the prosecutor.

The second judge also noted that the prosecutor had recommended PTI for other defendants, but the second judge did not cite other defendants who had been charged with similar offenses.

22

In any event, "prosecutorial decisions in PTI matters are primarily individualistic in nature," and thus ordinarily "a defendant will not prevail merely because he can demonstrate that, unlike himself, others who have been charged with similar offenses have been diverted into PTI."  Sutton, supra, 80 N.J. at 119.

Even if a "'defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment,'" that constitutes only "'an abuse of discretion.'"  Wallace, supra, 146 N.J. at 583.  "A 'patent and gross abuse of discretion' is more than just an abuse of discretion as traditionally conceived; it is a prosecutorial decision that 'has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.'"  Id. at 582-83.  "'In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.'"  Id. at 583 (citation omitted).  There is no indication that such subversion occurred here.

23

The second judge and defendant also cited the <u>Attorney General Directive to Ensure Uniform Enforcement of the "Graves Act"</u> (Oct. 23, 2008) (<u>2008 Directive</u>).[8]  The <u>2008 Directive</u> stated:

> In light of the Legislature's recent policy decision to significantly upgrade the seriousness of firearm offenses, it is expected that prosecutors will consent to a defendant's admission to PTI only in rare cases involving extraordinary and compelling circumstances that fall outside the heartland of the legislative policy to deter unauthorized gun possession (<u>e.g.</u>, the defendant has no prior involvement with the criminal justice system, he or she lawfully acquired and possessed the firearm in a different state and the defendant's presence in New Jersey was incident to lawful travel.)
>
> [<u>Id.</u> at 8.]

The <u>2008 Directive</u> does not itself state that a prosecutor is compelled to consent to PTI.  Rather, it "authorizes" prosecutors to consent "only in rare cases involving extraordinary and compelling circumstances."  <u>Id.</u> at 4-5, 9.  It precludes consent absent approval by the County Prosecutor or the Director of the Division of Criminal Justice, which in turn must be supported by a statement of reasons provided to the Attorney General.  <u>Id.</u> at 4-5, 9.  By contrast, it allows a prosecutor to

---

[8] The <u>2008 Directive</u>, and the Attorney General's <u>Correction to "Graves Act" Directive Regarding Extend Term Eligibility</u> (Nov. 25, 2008), are <u>available at</u> http://www.state.nj.us/lps/dcj/agguide/pdfs/Graves-Act-Oct23-2008.pdf.

follow the presumption of ineligibility and object to PTI without notice or approval. Id. at 9. Nothing in the 2008 Directive states that it creates a right to PTI. Rather, it proclaims its purpose to ensure "strict enforcement of the presumption of ineligibility for pre-trial intervention in Graves Act cases." Id. at 8.

Defendant argues that he falls within the 2008 Directive's example of a "rare case [] involving extraordinary and compelling circumstances" because he had no prior involvement with the criminal justice system, he lawfully acquired the firearm in a different state, and his presence in New Jersey was apparently incident to lawful travel. Defendant contends the prosecutor was compelled to grant PTI. Ibid. However, it is unclear that defendant meets all the criteria in the example because he failed to show he could lawfully "possess," carry or transport the firearm in Georgia. See ibid. Additionally, he allowed his firearms permit to expire, illegally possessed a large-capacity magazine and hollow-nose bullets, and kept them in the passenger compartment with the gun, unsecured and readily accessible. The prosecutor was free to give weight to those unfavorable facts.

The second judge gave no weight to those unfavorable facts, and suggested that the 2008 Directive's example compelled the prosecutor to grant PTI. We need not decide whether 2008

25

_Directive_'s example ever compels a prosecutor to consent to PTI. It is sufficient to hold here that it does not do so where the defendant does not meet all the criteria in the example, or where there are other facts unfavorable to the defendant on which the prosecutor can properly rely as a basis for denying PTI.

"A reviewing court does not have the authority in PTI matters to substitute [its own] discretion for that of the prosecutor," _Nwobu_, _supra_, 139 _N.J._ at 253, 260 (internal quotation marks omitted), "even when 'the prosecutor's decision is one which the trial court disagrees with or finds to be harsh,'" _Hoffman_, _supra_, 399 _N.J. Super._ at 216 (quoting _Kraft_, _supra_, 265 _N.J. Super._ at 112-13). Rather, courts must "view the prosecutor's decision through the filter of the highly deferential standard of review." _Wallace_, _supra_, 146 _N.J._ at 589. Under that severely limited standard, we cannot say that defendant carried his "heavy burden" to clearly and convincingly establish that the prosecutor's decision was a patent and gross abuse of discretion, or constituted an egregious example of injustice and unfairness. _Watkins_, _supra_, 193 _N.J._ at 520; _Negran_, _supra_, 178 _N.J._ at 82; _Nwobu_, _supra_, 139 _N.J._ at 246.

VI.

On September 24, 2014, long after this appeal was filed, the Attorney General issued a memorandum entitled _Clarification of_

26

"Graves Act" 2008 Directive with Respect to Offenses Committed by Out-of-State Visitors From States Where Their Gun-Possession Conduct Would Have Been Lawful (Sept. 24, 2014) (2014 Clarification).[9] After the appeal was submitted, the State filed a motion for supplemental briefing to address the impact, if any, of the 2014 Clarification on this case. We granted the State's unopposed motion. In the supplemental briefing, the parties have taken opposite positions on the applicability and effect of the 2014 Clarification.

The 2014 Clarification states that, "[t]o the extent practicable, the provisions of this clarifying memorandum shall apply to all pending cases." Id. at 10. The State argues that the 2014 Clarification would apply to defendant's case because it is pending on direct appeal, and that it has no effect on the State's appeal, but that if it were applied here it would not result in the grant of PTI. Defendant argues that applying the 2014 Clarification to his appeal would violate due process, but that its factors support PTI if it is applied here.

In resolving this dispute, we point out that the 2014 Clarification is simply a statement of the current policy of the Attorney General. It does not change the criteria for PTI set

---

[9] The 2014 Clarification is available at http://www.nj.gov/oag/dcj/agguide/directives/Graves-Act-clarification-2014.pdf (Sept. 24, 2014).

27

forth in the Act, <u>Rule</u> 3:28, or the Guidelines.  It also does not alter the validity or finality of judicial orders based on those criteria.  If a judicial order regarding PTI has become final, the issuance of a new policy would not affect the validity or non-appealability of that order.  If a judicial order denying PTI is on appeal, a defendant may not argue the order was invalid because of a subsequent change of prosecutorial policy.  If a judicial order granting PTI is on appeal, the State may not argue that order was invalid because of its own unilateral change of policy.  We must determine the validity of a judicial order by applying the law, not the shifting policies of the parties, even the Attorney General.

Of course, the Attorney General is free to adopt new prosecutorial policies within the wide range of discretion granted by the law.  Like any litigant, the State may change its position on appeal, withdraw its appeal, or attempt to settle the appeal prior to disposition by this court.  Here, the State instead has brought the Attorney General's clarified policy to our attention, and has argued why defendant still does not qualify for PTI under that policy.  We appreciate the State's clarified explanation of its position.  However, we hold the validity of a trial court's order regarding PTI must be determined based on the applicable law, not on subsequent changes in prosecutorial policy.

28

In any event, the outcome here would not be affected by application of the 2014 Clarification.  It advises prosecutors to avoid incarceration of certain out-of-state defendants either by consenting to PTI, or by tendering a plea offer of a non-custodial probationary sentence, 2014 Clarification, supra, at 1, as the State did here.  The 2014 Clarification applies only where the out-of-state defendant "produces proof that: 1) the firearm had been lawfully acquired in another jurisdiction, 2) defendant's possession would have been lawful in his or her home jurisdiction, and 3) defendant was under the misimpression that such possession was lawful in New Jersey."  Id. at 4.  The 2014 Clarification "presupposes that the three circumstances enumerated above are undisputed."  Ibid.  Thus, the 2014 Clarification is inapplicable here because the second circumstance is disputed, and defendant offered no proof of the third circumstance.

Finally, the 2014 Clarification instructs prosecutors to consider specified facts, several of which weigh against PTI here. Id. at 4-8.  For example, the handgun and its ammunition were not kept where they "would present less accessibility and thus less exposure to others," but instead were both "kept in the passenger cabin of [the] vehicle."  Id. at 6.  Moreover, during the stop defendant did not "volunteer[] information about the firearm to police without being prompted to do so," but instead only

29

"admitt[ed] to the presence of the firearm in response to a police question." Id. at 7.

## VII.

Accordingly, we must reverse the order admitting defendant to PTI. We remand the case for sentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2021-13T2