**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1474-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALEXANDER GOLDINSKY,

    Defendant-Appellant.

_____

Submitted March 17, 2021 – Decided April 14, 2021

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 19-05-0772.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Alexander Goldinsky appeals[1] from an August 16, 2019 Law Division order denying his motion to compel entry into the Pretrial Intervention Program (PTI). See N.J.S.A. 2C:43-12. After the rejection, defendant pled guilty to third-degree insurance fraud, N.J.S.A. 2C:21-4.6(a), and was sentenced to two years' probation on November 4, 2019. We affirm.

We derive the following undisputed facts from the record. Defendant staged an accident at his workplace. He alleged that he slipped and fell in the cafeteria. However, surveillance video revealed that defendant filled a cup with ice, threw the ice on the floor, and laid on top of it. Defendant was transported by ambulance to the hospital, where he told medical personnel that he had slipped, fallen, and injured himself. Defendant knew this false information would be provided to his health insurer, Oscar Garden State Insurance Company (Oscar). Oscar paid $563.49 to cover the ambulance bill.

Defendant's fraudulent conduct did not end at the hospital. He falsely claimed that as a result of the accident, he developed stuttering speech, suffered from constant headaches, started dropping items when he holds them in both hands, and experienced painful "frozen spasm sensations" and heavy eyelids that

---

[1] Pursuant to Rule 3:28-6(d), the denial of an application for enrollment in PTI "may be reviewed on appeal from a judgment of conviction notwithstanding that such judgment is entered following a plea of guilty."

wanted to close. Defendant was examined by a neurologist, who despite defendant's description of the accident and resulting symptoms, concluded:

> The stuttering and hypersomnolence are atypical, even for a concussion. It is questionable whether he had a concussion or not. I suspect the symptoms are mainly psychogenic, perhaps a conversion reaction to the stress of the trauma. I doubt these symptoms are due directly to brain injury or a concussion.

The neurologist's bills were submitted to a workers' compensation carrier, Hanover Insurance, which declined coverage because defendant was an independent contractor, not an employee. In total, defendant incurred more than $23,000 in medical bills for the treatment he received.

A Middlesex County grand jury returned a four-count indictment charging defendant with third-degree insurance fraud, N.J.S.A. 2C:21-4.6(a); third-degree health care fraud, N.J.S.A. 2C:21-4.2 and N.J.S.A. 2C:21-4.3(c); third-degree theft by deception, N.J.S.A. 2C:20-4; and fourth-degree attempted theft by deception, N.J.S.A. 2C:5-1(a) and N.J.S.A. 2C:20-4.

Defendant, who had no prior juvenile or adult criminal history, applied for admission to PTI. The PTI director recommended defendant's acceptance into the program. The PTI recommendation report noted defendant was fifty-seven years old, divorced, and reported his mental health as good. The report stated that "defendant was remorseful about the crime . . . and is willing to

provide restitution to the victim for their monetary loss." The report concluded that "PTI would serve as a sufficient sanction to deter future criminal conduct" and that the crimes defendant was charged with were "not [of] such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution."

The recommendation was overruled by the prosecutor. In a detailed, eight-page, single-spaced letter, the prosecutor considered the statutory factors enumerated in N.J.S.A. 2C:43-12(e) and concluded defendant was not a suitable candidate for diversion. The prosecutor found the following PTI factors were aggravating: one, two, three, four, six, seven, fourteen, and seventeen, N.J.S.A. 2C:43-12(e)(1), (2), (3), (4), (6), (7), (14) and (17).

As to factor one, "[t]he nature of the offense," N.J.S.A. 2C:43-12(e)(1), the prosecutor stated, "admitting this defendant into PTI would depreciate the seriousness of his conduct."

As to factor two, "[t]he facts of the case," N.J.S.A. 2C:43-12(e)(2), the prosecutor noted that defendant filed a workers' compensation claim for the purported injuries he suffered. He used his own medical insurance to cover the ambulance transport and hospital treatment expenses. However, his medical insurer only paid the bill for the ambulance transport. Even though defendant

had staged the accident and fabricated his injuries, he continued to receive treatment by a neurologist. In total, defendant accumulated $23,500 in medical bills for treatment he received for the staged fall. Hanover Insurance denied benefits because defendant was an independent contractor, not an employee. The prosecutor concluded that "[d]efendant's purposeful and intentional conduct of staging a slip and fall accident to deceive the insurance providers and receive medical treatment for injuries he did not sustain weighs heavily against the defendant's admission into the PTI program."

As to factor three, defendant's age and motivation, N.J.S.A. 2C:43-12(e)(3), the prosecutor noted defendant was a fifty-seven-year-old divorced male with two adult children who was "unemployed after being terminated due to the present offense." She further noted that defendant was not remorseful and had not accepted responsibility for his conduct. Defendant claimed, "he did not know that he had committed a crime until the day prior to his PTI interview." The prosecutor concluded that "defendant's inability to acknowledge his wrongdoing, minimization of the offense, and unwillingness to make amends, demonstrate[d] a lack of amenability to the rehabilitation process."

As to factor four, "[t]he desire of the complainant or victim to for[]go prosecution," N.J.S.A. 2C:43-12(e)(4), the prosecutor noted that the medical

insurer is not willing to forgo prosecution without defendant paying restitution and defendant had not made any attempts to make the insurer whole.

As to factor six, the likelihood that defendant's "crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment," N.J.S.A. 2C:43-12(e)(6), the prosecutor concluded that "[d]efendant's refusal to accept responsibility for his actions suggests that he is a poor candidate for rehabilitation."

As to factor seven, "[t]he needs and interests of the victim and society," N.J.S.A. 2C:43-12(e)(7), the prosecutor asserted these were not victimless crimes. The prosecutor contended:

> Society has a strong interest in seeing that the defendant and others are deterred from committing insurance fraud offenses. Insurance fraud affects individual policyholders through increased insurance premiums and is [detrimental] to businesses, corporations, and governmental entities. Insurance fraud costs consumers and businesses in New Jersey millions of dollars each year in direct and indirect losses (i.e., higher insurance premiums).

As to factors fourteen, "[w]hether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution," N.J.S.A. 2C:43-12(e)(14), and seventeen, "[w]hether or not the harm done to society by abandoning criminal prosecution would outweigh the

6

benefits to society from channeling an offender into a supervisory treatment program," N.J.S.A. 2C:43-12(e)(17), the prosecutor concluded "[t]here is a strong need to deter this defendant and others from committing insurance fraud offenses." She reiterated that "[i]nsurance fraud not only affects insurance companies . . . but is also financially damaging to policy holders[.]"

The prosecutor found the following PTI factors were mitigating: eight ("[t]he extent to which [defendant's] crime constitutes part of a continuing pattern of anti-social behavior"), N.J.S.A. 2C:43-12(e)(8); nine (defendant's "record of criminal and penal violations and the extent to which he may present a substantial danger to others"), N.J.S.A. 2C:43-12(e)(9); ten (whether the crime was assaultive or violent in nature), N.J.S.A. 2C:43-12(e)(10); twelve (history of violence towards others), N.J.S.A. 2C:43-12(e)(12); and thirteen (defendant's involvement in organized crime), N.J.S.A. 2C:43-12(e)(13).

The prosecutor found the following PTI factors were neutral: five ("existence of personal problems and character traits which may be related to [defendant's] crime and for which services are unavailable within the criminal justice system"), N.J.S.A. 2C:43-12(e)(5); eleven (whether prosecution would exacerbate the social problem that led to defendant's crime), N.J.S.A. 2C:43-12(e)(11); fifteen (whether defendant's involvement with others in the crime is

such that traditional criminal prosecution better serves the public interest), N.J.S.A. 2C:43-12(e)(15); and sixteen (whether defendant's participation in PTI will adversely affect the prosecution of codefendants), N.J.S.A. 2C:43-12(e)(16).

The prosecutor concluded "defendant ha[d] failed to establish that the values of supervisory treatment would outweigh the public need for prosecution." She found that the aggravating factors outweighed the neutral and mitigating factors. Therefore, "[a] qualitative balance of the factors militate[d] against defendant's admission into the Program."

Defendant moved to compel PTI admission, contending that the prosecutor's rejection was a gross and patent abuse of discretion. On August 16, 2019, the trial court issued an oral decision and accompanying order denying the motion.

The court found that the prosecutor incorrectly applied factor four as an aggravating factor since the insurer-victim was willing to forgo prosecution if defendant made restitution and defendant was willing to do so. The court ultimately concluded that while it did not agree with the prosecutor's rejection, the prosecutor's consideration of the PTI factors "was not such an abuse of discretion that warrant[ed]" reversal of her decision.

That same day defendant pled guilty to count one in exchange for a recommended sentence of non-custodial probation conditioned upon paying restitution in the amount $563.49 to an insurer, and dismissal of the remaining three counts. During the plea hearing defendant admitted that he staged a slip and fall accident by dumping ice on the floor and laid down to make everyone think he had slipped and fallen. Defendant was transported by ambulance to the hospital where he told medical personnel he had slipped and fallen and was injured. Defendant knew this misinformation would be provided to his insurance provider. Relying on these falsehoods regarding the staged accident, Oscar Health Insurance Company paid a claim in the amount of $563.49.

On November 4, 2019, defendant was sentenced in accordance with the plea agreement to a two-year, non-custodial term of probation subject to certain conditions, including making restitution to Oscar Garden State Insurance Corporation in the amount of $563.48 and performing fourteen hours of community service. This appeal followed.

Defendant raises the following point for our consideration:

> THE PROSECUTOR'S REJECTION OF DEFENDANT'S ADMISSION INTO THE PRE-TRIAL INTERVENTION PROGRAM WAS AN ARBITRARY, PATENT, AND GROSS ABUSE OF DISCRETION WHICH MUST BE CORRECTED BY THIS COURT.

9

We begin our analysis by recognizing certain well-established principles. "PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Roseman, 221 N.J. 611, 621 (2015) (quoting State v. Nwobu, 139 N.J. 236, 240 (1995)).

"PTI is essentially an extension of the charging decision, therefore the decision to grant or deny PTI is a 'quintessentially prosecutorial function.'" Id. at 624 (quoting State v. Wallace, 146 N.J. 576, 582 (1996)). "Prosecutorial discretion in this context is critical for two reasons. First, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options." Nwobu, 139 N.J. at 246. "Accordingly, 'prosecutors are granted broad discretion to determine if a defendant should be diverted' to PTI instead of being prosecuted." State v. Waters, 439 N.J. Super. 215, 225 (App. Div. 2015) (quoting State v. K.S., 220 N.J. 190, 199 (2015)). In State v. Negran, 178 N.J. 73 (2003), the Court described the wide but not unlimited discretion afforded prosecutors when reviewing PTI applications, and the enhanced deference courts should employ:

> In respect of the close relationship of the PTI
> program to the prosecutor's charging authority, courts

A-1474-19

allow prosecutors wide latitude in deciding whom to divert into the PTI program and whom to prosecute through a traditional trial. The deference has been categorized as "enhanced" or "extra" in nature. Thus, the scope of review is severely limited. Judicial review serves to check only the "most egregious examples of injustice and unfairness."

A prosecutor's discretion in respect of a PTI application is not without its limits, however. A rejected applicant must be provided with a clear statement of reasons for the denial.

[Id. at 82 (citations omitted); see also K.S., 220 N.J. at 199-200.]

A prosecutor abuses her discretion if the rejection of a PTI application:

(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgement. . . . In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.

[Roseman, 221 N.J. at 625 (alteration in original) (quoting State v. Bender, 80 N.J. 84, 93 (1979)).]

"Trial courts may overrule a prosecutor's decision to accept or reject a PTI application only when the circumstances 'clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion.'" Roseman, 221 N.J. at 624-25

11

(alteration in original) (quoting Wallace, 146 N.J. at 582). See also R. 3:28-6(b)(3) ("A defendant challenging the prosecutor's recommendation against enrollment into [PTI] must establish that the decision was a patent and gross abuse of discretion.").

We apply the same standard of review of a prosecutor's rejection of a PTI application as the trial court and review its decision de novo. Waters, 439 N.J. Super. at 226. We will interfere with a prosecutor's decision only in "the most egregious examples of injustice and unfairness." Waters, 439 N.J. Super at 226 (quoting State v. Lee, 437 N.J. Super. 555, 563 (App. Div. 2014)).

Although this was defendant's first criminal charge, "the interests of society may justify the denial of an application for admission into PTI even though a defendant has led an exemplary life except for the conduct which forms the basis of the pending criminal charges." State v. Seyler, 323 N.J. Super. 360, 370 (App. Div. 1999), aff'd o.b., 163 N.J. 69 (2000). Merely being "a first-time offender" who "admitted or accepted responsibility for the crime" is not enough. Waters, 439 N.J. Super. at 227 (quoting Nwobu, 139 N.J. at 252).

Here, the trial court stated it disagreed with the prosecutor's decision. It correctly abided by the principle, however, that a trial court must not substitute its own discretion for that of the prosecutor "even where the prosecutor's

decision is one which the trial court disagrees with or finds to be harsh." State v. Kraft, 265 N.J. Super. 106, 112-13 (App. Div. 1993).

In State v. Goodwin, 224 N.J. 102 (2016), the Court discussed the Legislature's compelling purpose in criminalizing insurance fraud:

> The Legislature declared that "[i]nsurance fraud is inimical to public safety, welfare and order within the State of New Jersey" and that "[a]ll New Jerseyans ultimately bear the societal burdens and costs caused by those who commit insurance fraud," N.J.S.A. 2C:21-4.4(a); that "[t]he problem of insurance fraud must be confronted aggressively by facilitating the detection, investigation and prosecution of such misconduct," N.J.S.A. 2C:21-4.4(b); and that the "prosecution of criminally culpable persons who knowingly commit or assist or conspire with others in committing fraud against insurance companies" is necessary "to punish wrongdoers and to appropriately deter others from such illicit activity," N.J.S.A. 2C:21-4.4(c).
>
> [Id. at 113-14 (alterations in original).]

The Court held that a person committed insurance fraud even when the fraud was detected and thwarted "before money passed hands." Id. at 114. Moreover, "investigations spurred by false statements necessarily result in the expenditure of a carrier's resources that eventually lead to increased insurance costs passed on to consumers." Ibid.

The societal need to eliminate insurance fraud implicates PTI factors one, two, and fourteen. N.J.S.A. 2C:43-12(e)(1), (2) and (14). The Legislature's

declaration of the need to prosecute insurance fraud and punish those who commit it militates strongly against the diversion of insurance fraud charges.

Defendant did not satisfy his heavy burden. He has not proven by clear and convincing evidence that the prosecutor's rejection of defendant's PTI application amounted to a patent and gross abuse of discretion. Defendant has not demonstrated that the prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. Nor has he shown that the prosecutor's decision clearly subverted the goals underlying PTI. See Roseman, 221 N.J. at 625 (quoting Bender, 80 N.J. at 93). The rejection was neither unjust nor unfair. See Negran, 178 N.J. at 82.

Conversely, granting defendant PTI would not necessarily serve all the goals of PTI set forth in N.J.S.A. 2C:43-12(a)(1)-(5). We cannot say that the prosecutor's decision could not have been reasonably made upon weighing the relevant factors. See Nwobu, 139 N.J. at 254. On the contrary, except as noted by the trial court, we find that the prosecutor properly considered and weighed each of the relevant factors in reaching the decision to reject defendant's application. "When a prosecutor's denial of PTI might have been inconsistent with one PTI Guideline, an appellate court nonetheless may uphold the

14

prosecutor's decision if based on other, appropriate considerations."  Pressler &

Verniero, <u>Current N.J. Court Rules</u>, cmt. 2 on <u>R.</u> 3:28-6 (2021) (citing <u>State v.</u>

<u>Randall</u>, 414 N.J. Super. 414, 420 (App. Div. 2010)).  We do so here.

For these reasons we find no basis to overturn the trial court's ruling.

Defendant does not otherwise attack his conviction or sentence.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1474-19