SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### State v. William Roseman and Lori Lewin (A-105/106-13) (073674)

**Argued March 2, 2015 -- Decided June 18, 2015**

**SOLOMON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether denial of defendants' applications to Pretrial Intervention (PTI) by the prosecutor was a patent and gross abuse of discretion.

Defendants William Roseman and Lori Lewin were married from 1992 until 2000, during which time Roseman was the Mayor of Carlstadt. As his wife, Lewin was entitled to, and received, benefits under Carlstadt's plan of health, prescription and dental insurance (Carlstadt's plan). After their divorce, each was responsible for their own health insurance pursuant to the divorce decree; Roseman and the son of the marriage would remain on Carlstadt's plan and Lewin was to be provided health insurance coverage through her employer. Roseman notified a Carlstadt payroll clerk, who also served as the Assistant to the Insurance Officer, of the divorce. At the direction of the clerk, Roseman changed his W-4 tax form to reflect that he was no longer married, but the clerk failed to remove Lewin's name from Carlstadt's plan. As a result, following the divorce, Lewin remained on Carlstadt's plan, in addition to her own employer-provided health insurance plan.

In late 2007, while transitioning to a new dental plan, Roseman discovered that Lewin was listed as an insured under Carlstadt's plan after the divorce. Roseman promptly reported this error to the town council, had Lewin removed from the plan, and initiated an internal audit of policy holders to detect other inaccuracies. The audit revealed that three former wives of city employees and five over-age children, were also improperly listed as insureds under Carlstadt's plan. Lewin resubmitted to her employer's health insurance carrier all of her medical, prescription and dental claims that had been paid by Carlstadt's insurance providers after the divorce. As a result, Carlstadt's insurance providers were repaid by Lewin's insurance plan for all re-submitted claims that were not time-barred, and Lewin made direct restitution to Carlstadt's insurance providers for the time-barred claims.

In July 2009, Roseman and Lewin were indicted on one count each of third-degree conspiracy, third-degree theft by deception, and second-degree official misconduct. Even though other individuals also were eligible to improperly receive benefits under Carlstadt's plan, Roseman and Lewin were the only individuals prosecuted. Roseman and Lewin rejected a plea offer and applied for admission into PTI. Initially, Roseman was rejected for PTI, but after he informed the prosecutor that he would agree to resign and be subject to a lifetime disqualification from office in exchange for PTI, approval of the agreement was sought and obtained by the prosecutor from the Attorney General's office. The prosecutor also expressed his willingness to dismiss the indictment against Lewin if Roseman was admitted into PTI under those conditions. Subsequently, defendants reconsidered and rejected the conditioned PTI offer, and Roseman filed a motion to dismiss the indictment.

The trial court dismissed the official misconduct charges, but refused to dismiss the remaining charges. The State was granted leave to file an interlocutory appeal. The Appellate Division reversed the trial judge and reinstated the official misconduct counts of the indictment. Defendants efforts to resolve the matter failed because Roseman refused to resign and agree never to pursue public office in the future as conditions to any agreement. As a result, the prosecutor rejected in writing both defendants' PTI applications, citing the presumption against PTI for second-degree offenses under the Guidelines for PTI provided in Rule 3:28 and eleven of the seventeen factors listed in N.J.S.A. 2C:43-12(e), including the "nature of the offense," the "facts of the case," the "likelihood that the applicant's crime is related to a condition or situation that would be conducive to change" through PTI, and "[w]hether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution."

The trial judge, over the objection of the prosecutor, ordered that Roseman and Lewin be admitted into PTI

1

without conditions, finding that the prosecutor's decision to deny PTI was a patent and gross abuse of discretion. The State appealed. In an unpublished opinion, the Appellate Division reversed. The panel found that Roseman had failed to establish by clear and convincing evidence that the prosecutor patently and grossly abused his discretion. As to Lewin, the panel remanded the matter for an individualized assessment. The Supreme Court granted defendants' petitions for certification. 218 N.J. 274 (2014).

**HELD**: Defendants have demonstrated extraordinary circumstances to overcome the presumption against Pretrial Intervention (PTI) for second-degree offenses and there is no factual justification for the application of the factors set forth by the prosecutor under N.J.S.A. 2C:43-12(e). Denial of defendants' applications to Pretrial Intervention (PTI) by the prosecutor was plainly a patent and gross abuse of discretion.

1. The assessment of a defendant's suitability for PTI must be conducted under the Guidelines for PTI provided in Rule 3:28, along with consideration of factors listed in N.J.S.A. 2C:43-12(e). Additionally, a PTI determination requires that the prosecutor make an individualized assessment of the defendant considering his or her "'amenability to correction' and potential 'responsiveness to rehabilitation.'" State v. Watkins, 193 N.J. 507, 520 (2008) (quoting N.J.S.A. 2C:43-12(b)). N.J.S.A. 2C:43-12(b) and Guideline 3(i) specify a presumption against PTI for any first- or second-degree crime and any crime that is a breach of the public trust. Regardless of the statutory presumptions, a criminal defendant can show that PTI is nonetheless warranted through "facts or materials demonstrating the defendant's amenability to the rehabilitation process." Pressler & Verneiro, Current N.J. Court Rules, Guideline 2 on R. 3:28, at 1167. Presumptions against PTI reflect an assumption that certain defendants "have committed crimes that are, by their very nature, serious or heinous and with respect to which the benefits of diversion are presumptively unavailable." Watkins, supra, 193 N.J. at 523. Accordingly, this Court has stated that overcoming these presumptions requires showing "something extraordinary or unusual" about the defendant's background. State v. Nwobu, 139 N.J. 236, 252-253 (1995). (pp. 9-12)

2. To overcome the "presumption of incarceration for first- and second-degree offenders," there must be "'truly extraordinary and unanticipated circumstances' when the sentencing court finds that a 'serious injustice' exists." Nwobu, supra, 139 N.J. at 252. In Nwobu, the Court made clear that this is a fact-sensitive analysis that requires consideration of "idiosyncratic" circumstances demonstrating that denial of PTI has resulted in a "serious injustice." Id. at 252. Even if "extraordinary and unusual" circumstances exist to overcome the presumption against admission into PTI for certain offenses, this Court has recognized that PTI is essentially an extension of the charging decision, therefore the decision to grant or deny PTI is a "quintessentially prosecutorial function." State v. Wallace, 146 N.J. 576, 582 (1996). Trial courts may overrule a prosecutor's decision to accept or reject a PTI application only when the circumstances "'clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion.'" Ibid. (pp. 12-16)

3. The circumstances presented in this case are compelling and idiosyncratic. The criminal violations were essentially self-reported, and occurred through an administrative error after Roseman correctly advised the clerk of his marital status change and noted the change on his W-4 form. Lewin's claims that were paid under Carlstadt's plan were never personally submitted by Lewin or Roseman. Lewin's correct health-care provider made restitution on all timely claims, and Lewin personally made restitution in the full amount of all time-barred claims. The Court finds these factual circumstances sufficiently "extraordinary and unusual" to overcome the presumption against PTI for second-degree offenses. (pp. 16-18)

4. There is no factual justification for the application of the factors set forth by the prosecutor under N.J.S.A. 2C:43-12(e). The prosecutor merely parrots the statutory language, and presents bare assertions regarding Roseman's amenability to PTI. The record establishes that: (1) Roseman was not at fault for the initial reporting error; (2) upon discovering the error he, without prompting, advised the Carlstadt Town Council; and (3) Roseman took several steps to address the problem. Thus, there are "extraordinary and unusual" circumstances evincing that denial of Roseman's PTI application was plainly a patent and gross abuse of discretion. Although the appropriate remedy for an inadequate statement of reasons by the prosecutor would ordinarily be to remand the matter, under the circumstances, the Court is constrained to reverse the prosecutor's decision and compel admission of Roseman into PTI. Also, the prosecutor's letter objecting to Lewin's PTI application reveals that the assessment of Lewin was entirely dependent on Roseman, thereby depriving Lewin of an individualized assessment. (pp. 18-24)

2

The judgment of the Appellate Division is **REVERSED** and the trial court's order compelling defendants' admission into the Bergen County Pretrial Intervention Program is **REINSTATED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion. JUSTICE ALBIN did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

WILLIAM ROSEMAN and LORI
LEWIN,

    Defendants-Appellants.

Argued March 2, 2015 – Decided June 18, 2015

On certification to the Superior Court,
Appellate Division.

Patricia M. Prezioso argued the cause for
appellant William Roseman (McCusker,
Anselmi, Rosen & Carvelli, attorneys; Ms.
Prezioso and Sarah L. Fehm, on the briefs).

Alan L. Zegas argued the cause for appellant
Lori Lewin (Law Offices of Alan L. Zegas,
attorney; Mr. Zegas and Stephanie G. Forbes,
on the briefs).

Catherine A. Foddai, Senior Assistant
Prosecutor, argued the cause for respondent
(John L. Molinelli, Bergen County
Prosecutor, attorney).

Sarah E. Ross, Deputy Attorney General,
argued the cause for amicus curiae Attorney
General of New Jersey (John J. Hoffman,
Acting Attorney General, attorney).

JUSTICE SOLOMON delivered the opinion of the Court.

We are called upon to determine whether denial of

defendants' applications to Pretrial Intervention (PTI) by the

prosecutor was a patent and gross abuse of discretion. For the reasons set forth below, we reverse the judgment of the Appellate Division and reinstate the trial court's order compelling defendants' admission into the Bergen County Pretrial Intervention Program over the objection of the prosecutor.

I.

The record of the trial court proceedings reveals the following. Defendants William Roseman and Lori Lewin were married from 1992 until 2000, during which time Roseman was elected the Mayor of Carlstadt. As his wife, Lewin was entitled to, and received, medical, dental and prescription benefits under Carlstadt's plan of health, prescription and dental insurance (Carlstadt's plan). After their divorce, each was responsible for their own health insurance pursuant to the divorce decree; Roseman and the son of the marriage would remain on Carlstadt's plan and Lewin was to be provided health insurance coverage through her own employer. Roseman notified a Carlstadt payroll clerk, who also served as the Assistant to the Insurance Officer, of the divorce. At the direction of the clerk, Roseman changed his W-4 tax form to reflect that he was no longer married, but Lewin's name was not removed from Carlstadt's plan. During the investigation of this matter by the prosecutor's office, the clerk told investigators that she

2

failed to remove Lewin from Carlstadt's plan because the issue had simply "slipped her mind." As a result of this administrative error, following the divorce, Lewin remained on Carlstadt's plan, in addition to her own employer-provided health insurance plan.

Some of Lewin's health care providers who supplied services to Lewin during the marriage, had health insurance information for both Lewin's insurance plan and Carlstadt's plan, and continued to submit claims under Carlstadt's plan following the divorce. Between 2000 and 2007, approximately one hundred explanation of benefit (EOB) forms addressed to Roseman were sent to the marital residence where Lewin continued to reside following the divorce; thirteen of those EOB forms listed claims against Carlstadt's plan for services provided to Lewin.

In late 2007, Carlstadt changed its dental insurance plan, requiring Roseman to submit forms transferring himself and his son to the new dental plan. After reviewing the forms, the Carlstadt Insurance Administrator inquired as to why Lewin was not listed as an insured of the dental plan, and Roseman advised that he and Lewin were divorced in 2000. At this time, Roseman discovered that Lewin was listed as an insured under Carlstadt's plan after the divorce. Roseman promptly reported this error to the town council, had Lewin removed from Carlstadt's plan, and initiated an internal audit of policy holders to detect other

3

inaccuracies. The audit revealed that three former wives of city employees, including the former wives of a deputy police chief and a police lieutenant, and five over-age children, were also improperly listed as insureds under Carlstadt's plan.

In order to reimburse Carlstadt's health insurance provider, Lewin resubmitted to her employer's health insurance carrier all of her medical, prescription and dental claims that had been paid by Carlstadt's insurance providers after the divorce. As a result, Carlstadt's insurance providers were repaid by Lewin's insurance plan for all re-submitted claims that were not time-barred, and Lewin made direct restitution to Carlstadt's insurance providers for the time-barred claims.

The investigation by the Bergen County Prosecutor's Office began in this matter when it was informed by a former councilmember that Lewin had been receiving medical benefits under Carlstadt's plan following her divorce from Roseman. After the investigation by the prosecutor's office, Roseman and Lewin were indicted in July 2009 on one count each of third-degree conspiracy, N.J.S.A. 2C:5-2; third-degree theft by deception, N.J.S.A. 2C:20-4; and second-degree official misconduct, N.J.S.A. 2C:30-2a. Even though eight other individuals also were eligible to improperly receive benefits under Carlstadt's plan, Roseman and Lewin were the only individuals prosecuted.

4

The prosecutor extended plea offers of probationary sentences to both Roseman and Lewin in exchange for guilty pleas to the third-degree theft by deception charge.  The plea offer extended to Roseman also required that he admit guilt, resign from office, and sign a consent order preventing him from holding any political office in the future.

Both Roseman and Lewin rejected the offer and applied for admission into PTI.  Initially, Roseman was rejected for PTI, but after he informed the prosecutor that he would agree to resign and be subject to a lifetime disqualification from office in exchange for the prosecutor's consent to his PTI application, approval of the agreement was sought and obtained by the prosecutor from the Attorney General's office.  The prosecutor also expressed his willingness to dismiss the indictment against Lewin if Roseman was admitted into PTI under those conditions. Subsequently, defendants reconsidered and rejected the conditioned PTI offer, and Roseman hired new counsel who filed a motion to dismiss the indictment.

Before the motion to dismiss was decided, the grand jury delivered a superseding indictment adding one additional count of each offense charged against each defendant.  Thereafter, Roseman amended his motion to dismiss to reflect these new charges.  On the motion to dismiss, the trial judge dismissed

5

the official misconduct charges, but refused to dismiss the remaining charges.

The State was granted leave to file an interlocutory appeal. The Appellate Division reversed the trial judge and reinstated the official misconduct counts of the indictment. After the interlocutory appeal was decided, defendants initiated efforts to resolve the matter, but those efforts failed because Roseman refused to resign and agree never to pursue public office in the future as conditions to any agreement.

As a result, the prosecutor rejected in writing both defendants' PTI applications, citing the presumption against PTI for second-degree offenses provided by the PTI Guidelines and the following factors under N.J.S.A. 2C:43-12(e): the "nature of the offense," N.J.S.A. 2C:43-12(e)(1); the "facts of the case," N.J.S.A. 2C:43-12(e)(2); the "motivation and age" of the defendants, N.J.S.A. 2C:43-12(e)(3); the "desire of the complainant or victim to forego prosecution," N.J.S.A. 2C:43-12(e)(4); the "existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system," N.J.S.A. 2C:43-12(e)(5); the "likelihood that the applicant's crime is related to a condition or situation that would be conducive to change" through PTI, N.J.S.A. 2C:43-12(e)(6); the "needs and interests of the victim and society,"

N.J.S.A. 2C:43-12(e)(7); a "continuing pattern of anti-social behavior," N.J.S.A. 2C:43-12(e)(8); the failure to prosecute "would exacerbate social problems," N.J.S.A. 2C:43-12(e)(11); "[w]hether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution," N.J.S.A. 2C:43-12(e)(14); and "[w]hether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program," N.J.S.A. 2C:43-12(e)(17).

Following written rejection of defendants' PTI applications but before trial, the trial judge, over the objection of the prosecutor, ordered that Roseman and Lewin be admitted into PTI without conditions because the "State's decision objecting to defendants' entry into PTI [was] not premised upon a consideration of all relevant factors and [was] a clear error in judgment that constitutes a patent and gross abuse of discretion." The State filed a notice of appeal.

In an unpublished opinion, the Appellate Division reversed the order of the trial judge that directed defendants' admissions into PTI over the prosecutor's objection. The panel found that the prosecutor "was entitled to rely on the presumptions against PTI for second-degree offenses and for offenses committed by a public official," and that Roseman had

7

failed to establish by clear and convincing evidence that the prosecutor patently and grossly abused his discretion in denying Roseman's PTI application. As to Lewin, the panel found that "the absence of an individual assessment of [her] circumstances," and the fact that "consideration of Lewin's eligibility for PTI was repeatedly linked to Roseman's," required remand for an individualized assessment of Lewin's PTI application.

This Court granted certification to determine whether the prosecutor's denial of defendants' PTI applications constituted a patent and gross abuse of discretion justifying the trial court's admission of defendants into PTI over the objection of the prosecutor. 218 N.J. 274 (2014).

## II.

Defendants maintain that they established by "clear and convincing" evidence that the prosecutor abused his discretion in denying their PTI applications. Therefore, defendants submit that the Appellate Division's decision reversing the trial court's order gives prosecutors "unbridled discretion" to deny PTI. Defendants also argue that the Appellate Division's holding amounts to a per se rule that persons charged with official misconduct cannot be admitted into PTI unless the prosecutor consents, and that such a per se rule violates the PTI Guidelines.

8

Furthermore, defendants claim that by relying on the presumption against admission into PTI for second-degree official misconduct, and by relying solely on Roseman's actions to deny Lewin's application, both defendants were deprived of individualized assessments of their amenability to rehabilitation through PTI in violation of the PTI Guidelines. Defendants argue that the State's lack of an individualized assessment of each application amounts to an abuse of discretion.

The State contends that the trial court improperly substituted its judgment for that of the prosecutor and failed to afford sufficient deference to the prosecutor's denial of defendants' PTI applications by compelling their admission into PTI. The State maintains that the prosecutor's denial was entitled to deference because he properly considered all relevant factors pursuant to N.J.S.A. 2C:43-12(e). Thus, the State claims that the prosecutor's denial of defendants' PTI applications does not constitute an abuse of discretion. Lastly, the State argues that defendants' PTI applications were untimely pursuant to Rule 3:28.

III.

A.

We begin by discussing the historical background of PTI and its purpose. PTI is a "diversionary program through which

9

certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior." State v. Nwobu, 139 N.J. 236, 240 (1995). PTI was established initially by Rule 3:28 in 1970. State v. Watkins, 193 N.J. 507, 517 (2008) (citing State v. Leonardis, 71 N.J. 85, 103 (1976) [hereinafter Leonardis I]). In 1979, the Legislature incorporated PTI into the overhaul of the criminal codes, establishing PTI as a statewide program pursuant to N.J.S.A. 2C:43-12. Ibid. Thus, PTI programs are "governed simultaneously by the Rule and the statute which 'generally mirror[]' each other." Ibid. (quoting State v. Wallace, 146 N.J. 576, 582 (1996) (citations omitted)).

Pursuant to the procedures and guidelines established by Rule 3:28 and N.J.S.A. 2C:43-12, acceptance into PTI is dependent upon an initial recommendation by the Criminal Division Manager and consent of the prosecutor. The assessment of a defendant's suitability for PTI must be conducted under the Guidelines for PTI provided in Rule 3:28, along with consideration of factors listed in N.J.S.A. 2C:43-12(e). These factors include "the details of the case, defendant's motives, age, past criminal record, standing in the community, and employment performance[.]" Watkins, supra, 193 N.J. at 520; see N.J.S.A. 2C:43-12(e). Additionally, a PTI determination requires that the prosecutor make an individualized assessment

of the defendant considering his or her "'amenability to correction' and potential 'responsiveness to rehabilitation.'" Watkins, supra, 193 N.J. at 520 (quoting N.J.S.A. 2C:43-12(b)).

While all defendants may apply for admission into PTI, N.J.S.A. 2C:43-12(b), the PTI Guidelines provide several statutory presumptions against PTI when defendants have committed certain offenses, see Watkins, supra, 193 N.J. at 513. Relevant to the present case, N.J.S.A. 2C:43-12(b) specifies a statutory presumption against PTI for "a defendant who was a public officer or employee whose offense involved or touched upon his public office or employment." Similarly, Guideline 3(i) identifies a presumption against PTI for any first- or second-degree crime, as well as any crime that is a breach of the public trust. Pressler & Verniero, Current N.J. Court Rules, Guideline 3(i) on R. 3:28, at 1169 (2015) (stating persons charged with first- or second-degree crimes "should ordinarily not be considered for enrollment in a PTI program except on joint application by the defendant and the prosecutor").

Regardless of the statutory presumptions, "[e]ligibility for PTI is broad enough to include all defendants who demonstrate sufficient effort to effect necessary behavioral change and show that future criminal behavior will not occur." Pressler & Verniero, supra, Guideline 2 on R. 3:28, at 1167.

11

When a statutory presumption against PTI applies, as here, a criminal defendant can show that PTI is nonetheless warranted through "facts or materials demonstrating the defendant's amenability to the rehabilitation process." Ibid. To overcome the statutory presumption against PTI the defendant must "show[] compelling reasons justifying . . . admission, and establish[] that a decision against enrollment would be arbitrary and unreasonable." Ibid. Presumptions against PTI reflect an assumption that certain defendants "have committed crimes that are, by their very nature, serious or heinous and with respect to which the benefits of diversion are presumptively unavailable." Watkins, supra, 193 N.J. at 523. Accordingly, this Court has stated that overcoming these presumptions requires showing "something extraordinary or unusual" about the defendant's background. Nwobu, supra, 139 N.J. at 252-53.

B.

Our discussion in Nwobu, supra, 139 N.J. 236, of the special circumstances required to overcome the presumption against acceptance into PTI is instructive. In that case, we noted the fact "[t]hat Nwobu is charged with a second-degree crime is the single most important factor involved." Id. at 252. This Court then compared the issue of Nwobu's admission into PTI to the related context of criminal sentencing, and stated that to overcome the "presumption of incarceration for

12

first- and second-degree offenders," there must be "'truly extraordinary and unanticipated circumstances' when the sentencing court finds that a 'serious injustice' exists." Ibid. (quoting State v. Roth, 95 N.J. 334, 358 (1984)). Such a showing requires more than just "that the accused is a first-time offender and has admitted or accepted responsibility for the crime." Id. at 252-53.

The prosecutor in Nwobu rejected the defendant's PTI application based upon the following: the statutory presumption against admission into PTI for second-degree offenders; that the offense constituted "a continuing pattern of anti-social behavior"; and that "PTI would fail to serve as a sufficient sanction or deterrent." Id. at 241. In Nwobu, where defendant had been charged with second-degree theft by deception and was seeking to overcome rejection of his PTI application by the prosecutor, we found "nothing extraordinary or unusual" to overcome the presumption against admission into PTI. Id. at 241, 253. We rejected Nwobu's contentions that his status as a first-time offender and his assertions that he played a relatively minor role in the fraud rendered the prosecutor's denial of his application a patent and gross abuse of discretion. Id. at 252-53.

13

In a matter consolidated with Nwobu[1], we affirmed the prosecutor's decision to deny PTI applications by three defendants who had been charged with throwing firecrackers into a crowd of people, second- and third-degree offenses.  Id. at 255-56.  As with Nwobu, we rejected the contentions that, because defendants were first-time offenders and were otherwise productive citizens, the prosecutor's decision amounted to a patent and gross abuse of discretion.  Ibid.  "Denying PTI to those who intentionally throw destructive devices into a crowd reflects legitimate considerations that are supported by the Guidelines."  Id. at 256.

Nwobu did not establish a standard for "extraordinary and unusual" circumstances.  To the contrary, we made clear that this is a fact-sensitive analysis that requires consideration of "idiosyncratic" circumstances demonstrating that denial of PTI has resulted in a "serious injustice."  Id. at 252; accord State v. Jabbour, 118 N.J. 1, 7 (1990).

C.

Even if "extraordinary and unusual" circumstances exist to overcome the presumption against admission into PTI for certain offenses, this Court has recognized that PTI is essentially an

---

[1] The second case, State v. Callender, was consolidated with Nwobu in order to adjudicate whether the prosecutors in both cases "arbitrarily rejected defendants' admission into Pretrial Intervention programs[.]"  Nwobu, supra, 138 N.J. at 240.

14

extension of the charging decision, therefore the decision to grant or deny PTI is a "quintessentially prosecutorial function." Wallace, supra, 146 N.J. at 582. As a result, the prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of deference. State v. Leonardis, 73 N.J. 360, 381 (1977) [hereinafter Leonardis II]. Trial courts may overrule a prosecutor's decision to accept or reject a PTI application only when the circumstances "'clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion.'" Wallace, supra, 146 N.J. at 582 (quoting Leonardis II, supra, 73 N.J. at 382). In State v. Bender, 80 N.J. 84, 93 (1979), this Court defined a "patent and gross abuse of discretion" in the context of a prosecutor's denial of a PTI application:

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgement. . . . In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.

Where a defendant can make that showing, a trial court may admit a defendant, by order, into PTI over the prosecutor's objection. State v. Dalglish, 86 N.J. 503, 513 (1981).

IV.

A.

Initially, this Court will dispose of the State's timeliness argument. It is undisputed that both defendants applied to PTI within twenty-eight days of their indictment in accordance with Rule 3:28. Nevertheless, the State argues that defendants' PTI applications were untimely because the trial judge reopened discussions of defendants' PTI admission more than two years after the indictment, and after defendants' applications had been rejected by the prosecutor.

It is "abundantly clear that, provided a defendant files a timely application for PTI as required by R. 3:28(h), the denial of his or her application may be reviewed prior to trial, and may also be reviewed on direct appeal following conviction[2] either after trial or the entry of a guilty plea." State v. Halm, 319 N.J. Super. 569, 579 (App. Div.), certif. denied, 162

---

[2] We note that in State v. Bell, 217 N.J. 336 (2014), where the co-defendant Schwab timely applied and was admitted to PTI, we rejected as untimely defendant Bell's PTI application made more than three years after indictment, and after defendant proceeded to trial and was convicted of third degree attempted aggravated assault.

16

N.J. 131 (1999).  The applications for PTI that led to this dispute were properly filed by defendants within the twenty-eight days provided by the Rule, and were properly treated by the trial judge as reconsideration of previous applications, rather than new, untimely applications.

B.

Turning to the considerations and presumptions relevant to this case, defendants were charged with second-degree official misconduct, which creates a presumption against acceptance into PTI under both the Guidelines and N.J.S.A. 2C:43-12(b).  State v. Caliguiri, 158 N.J. 28, 42 (1999).  However, the presumption is rebuttable upon a "showing [of] compelling reasons justifying the applicant's admission and establishing that a decision against enrollment would be arbitrary and unreasonable." Pressler & Verniero, supra, Guideline 3(i) to R. 3:28, at 1169. The question before us is whether there were compelling reasons to overcome the presumption against defendants' admission into PTI.

The circumstances presented here are compelling and idiosyncratic.  The criminal violations were essentially self-reported, and occurred through an administrative error after Roseman correctly advised the clerk of his marital status change and noted the change on his W-4 form.  Upon discovery, Roseman took immediate action to ameliorate the problem by removing

17

Lewin from Carlstadt's plan and initiating an internal audit of all Carlstadt health insurance policy holders. Lewin's claims that were paid under Carlstadt's plan were never personally submitted by Lewin or Roseman. Rather, the claims were submitted by Lewin's health-care providers who had both insurance plans on file. Lewin's correct health-care provider made restitution on all timely claims, and Lewin personally made restitution in the full amount of all time-barred claims.

We find these factual circumstances sufficiently "extraordinary and unusual" to overcome the presumption against PTI for second-degree offenses. However, our finding that defendants have demonstrated extraordinary circumstances to overcome the presumption against PTI for second-degree offenses does not end our inquiry. Defendants' applications must still be evaluated under the factors provided in N.J.S.A. 2C:43-12(e) to determine whether the prosecutor's denial was a patent and gross abuse of discretion.

### C.

A prosecutor's decision to deny a defendant's PTI application is a "patent and gross abuse of discretion" if the prosecutor's decision "failed to consider all relevant factors, was based on irrelevant or inappropriate factors, or constituted a 'clear error in judgment.'" Nwobu, supra, 139 N.J. at 247 (quoting Bender, supra, 80 N.J. at 93). "Additionally, an abuse

18

of discretion is 'patent and gross' if it is shown 'that the prosecutorial error complained of will clearly subvert the goals underlying [PTI].'" Ibid.

As noted previously, the State cites factors one through eight, eleven, fourteen, and seventeen of the PTI statute, N.J.S.A. 2C:43-12(e), in support of its denial of Roseman's PTI application. However, there is no factual justification for the application of those factors set forth by the prosecutor in the record, which includes the prosecutor's written denial of Roseman's PTI application. Rather, the statement of reasons provided by the prosecutor merely parrots the statutory language, and presents bare assertions regarding Roseman's amenability to PTI.

For example, the State fails to provide any factual support for its conclusions in the letter denying Roseman's PTI application that: (1) denial of Roseman's PTI application was justified, in part, by his "motivation and age"; (2) "there may exist personal problems or character traits which may be related to the defendant's crime, given the length of time this scheme continued and for which services are unavailable or insufficient within the criminal justice system, or it is probable that the causes of defendant's criminal behavior cannot be controlled by proper treatment effectively through the supervisory treatment program"; and (3) "the crimes appear to constitute part of a

19

continuing pattern of defendant's anti-social behavior, since these were repeated thefts committed over many years."

The State relies heavily on the nature of defendants' alleged wrongdoing and the facts of the case in arguing that defendants committed theft by deception over a long period of time and that Roseman, by virtue of the EOB forms, was aware that Lewin remained on the policy. However, the only evidence on the subject that is of record establishes that: (1) Roseman was not at fault for the initial reporting error; (2) upon discovering the error he, without prompting, advised the Carlstadt Town Council; and (3) Roseman took several steps to address the problem, including immediately removing Lewin from the plan and initiating an internal audit of all policy holders under Carlstadt's plan. Thus, the record directly contradicts the State's assertion that the nature and facts of the case militate in favor of prosecution.

Indeed, contrary to the prosecutor's findings, the unusual facts presented here suggest that Roseman would have been particularly amenable to PTI. Furthermore, while the Borough of Carlstadt would seem to have a legitimate interest in pursuing a prosecution alleging theft of public funds, N.J.S.A. 2C:43-12(e)(7), the prosecutor's reliance upon this factor is refuted by the State's decision to prosecute only defendants even though three ex-wives and five adult children of city employees also

were eligible to improperly receive benefits under Carlstadt's plan.  Moreover, given Roseman's self-reporting, prompt remediation, and stroke that occurred since his indictment in 2009 and caused partial vision and memory loss, it is difficult to conceive of how the prosecutor decided that: "[t]here is a likelihood that the defendant's crime is related to a condition or situation that would not be conducive to change through his participation in supervisory treatment"; "[f]ailure to prosecute would exacerbate the social problems that led to the defendant's criminal act [because] [w]ithout prosecution, those who engage in criminal behavior, particularly against public entities, may believe it is acceptable conduct or that the benefit of such conduct outweighs the penalties," or even what those social problems were; how the "value of supervisory treatment would be outweighed by the public need for prosecution," or how "[t]he harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling [defendant] into a supervisory treatment program."  Further, the State's assertion that supervisory treatment would be insufficient in this case fails to account for the rehabilitative goals of PTI, or that defendants are fully employed, productive members of their community.

The prosecutor's bald declarations are insufficient to support denial of Roseman's PTI application.  Nwobu, supra, 139

21

N.J. at 251.  Accordingly, we cannot determine, based on the record presented to us, that the factors considered by the prosecutor support denial of Roseman's application.  We therefore conclude the prosecutor's reliance on the above-referenced factors was improper.

The prosecutor relied upon irrelevant or inappropriate factors, and there are "extraordinary and unusual" circumstances evincing that denial of Roseman's PTI application constituted a clear error in judgement.  Therefore, we determine that such a denial was plainly a patent and gross abuse of discretion that "'clearly subvert the goals underlying [PTI].'"  Nwobu, supra, 139 N.J. at 247 (quoting Bender, supra, 80 N.J. at 93).

Ordinarily, the appropriate remedy for an inadequate statement of reasons by the prosecutor would be remand for further consideration of a defendant's PTI application, and the opportunity to provide an adequate factual basis for the prosecutor's findings.  However, where, as here, nearly six years has elapsed since Roseman's indictment during which time he suffered a stroke, and circumstances show clearly and convincingly that there has been a patent and gross abuse of discretion by the prosecutor which constituted a clear error in judgment that will "'subvert the goals underlying [PTI],'" ibid., remand is inappropriate.  We are therefore constrained to

22

reverse the prosecutor's decision and compel admission of Roseman into PTI.

D.

We now turn to Lewin's PTI application. In addition to consideration of appropriate, relevant factors in evaluating an applicant's PTI application, we require that "a prosecutor must consider an individual defendant's features that bear on his or her amenability to rehabilitation." Nwobu, supra, 139 N.J. at 255; see also State v. Sutton, 80 N.J. 110, 119 (1979). Disposition of Lewin's case, whether through plea or PTI, was explicitly linked to Roseman's disposition. The letter from the prosecutor listing the factors supporting a denial of Lewin's PTI application is brimming with references to Roseman's actions and contains a nearly identical factor analysis. While the use of identical factors for co-defendants' PTI applications does not rob those applicants of an individualized determination, the prosecutor's letter objecting to Lewin's PTI application reveals that the assessment of Lewin was entirely dependent on Roseman, disproving any assertion that Lewin received an individualized assessment.

V.

For the reasons set forth above, the judgment of the Appellate Division is reversed, and the trial court's order

23

compelling defendants' admission into the Bergen County Pretrial Intervention Program is reinstated.


    CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGE CUFF (temporarily assigned) join in JUSTICE SOLOMON's opinion.  JUSTICE ALBIN did not participate.

SUPREME COURT OF NEW JERSEY

NO.   A-105/106                          SEPTEMBER TERM 2013

ON CERTIFICATION TO     Appellate Division, Superior Court


STATE OF NEW JERSEY,

    Plaintiff-Respondent,

         v.

WILLIAM ROSEMAN and LORI
LEWIN,

    Defendants-Appellants.


DECIDED          June 18, 2015
                Chief Justice Rabner          PRESIDING
OPINION BY              Justice Solomon
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REINSTATE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |