# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2957-17T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JILL PETRUSKA,

    Defendant-Respondent.

_____

Argued telephonically December 10, 2018 –
Decided May 20, 2019

Before Judges Simonelli, Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-07-1843.

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the brief).

Patrick J. Caserta argued the cause for respondent.

PER CURIAM

The State appeals from the February 21, 2018 order of the Law Division directing defendant's admission into the pretrial intervention (PTI) program, N.J.S.A. 2C:43-12; Rule 3:28-1 to -10, over the State's objection. We reverse and remand for the prosecutor's reconsideration of defendant's application.

I.

On September 14, 2016, in response to a complaint of a foul odor, a Nutley police officer gained entry into defendant's apartment. He discovered several cat carcasses on the floor in varying states of decomposition. Some of the remains were skeletal. Other carcasses appeared to have been eaten by living cats in the apartment who looked severely neglected and unhealthy. Garbage and litter boxes overflowing with fecal matter were scattered throughout the apartment. The toilet bowls were completely dry, the cats having consumed all of the water in them. The deplorable conditions and stench made it necessary for the officer to seek the assistance of the fire department's ventilation equipment and the protection of a hazardous materials suit before fully entering the premises.

Thirteen live cats were removed from the apartment. Animal control officers estimated the number of dead cats in the premises at twelve, but reported

that the total could be higher because "a large amount of them had been gorged upon and ingested by the living cats." They tallied the number of dead cats by counting skulls, but could not account for all of the detached feline body parts found in the apartment. One cat died of malnutrition the day after its removal.

Defendant appeared at the apartment while recovery operations were underway. She apologized for the condition of the residence and admitted that she had not lived there for several weeks. She blamed her absence on the recent death of a pet dog and her need to care for a sick relative, claiming that she stopped by the apartment to feed the cats periodically. Defendant later claimed that she only had three cats and did not know how the approximately two dozen other cats got into her apartment. Still later, defendant told a therapist that she had arranged for someone else to care for the cats while she was not residing in the apartment.

An Essex County grand jury charged defendant with twenty-six counts of third-degree animal cruelty, N.J.S.A. 4:22-17(c)(1) to (3) and N.J.S.A. 4:22-17(d)(1)(a) to (b). Among other evidence, the grand jury saw photographs of the conditions in the apartment, including photographs of cat carcasses, skeletons, and feline body parts on the floor, and heard testimony from veterinarians about the desperate physical condition of the living cats in the

residence. A veterinarian testified that some of the cats had reproduced in the apartment and consumed their offspring to survive.[1]

Defendant sought admission into the PTI program. On October 4, 2017, an assistant prosecutor issued a written rejection of defendant's application. The assistant prosecutor, citing Guideline 3(i) to Rule 3:28, determined that defendant was presumptively ineligible for PTI because the charged offenses were "deliberately committed with violence or threat of violence against another person[.]" Guidelines for Operation of Pretrial Intervention in New Jersey, Pressler & Verniero, Current N.J. Court Rules, Guideline 3, following R. 3:28 at 1235 (2017). While recognizing that cats are not "persons," the assistant prosecutor determined that the presumption against admission applies because the cats were "victims" that were "particularly vulnerable or incapable of resistance." In support of this determination, the assistant prosecutor relied on

---

[1] In addition, Nutley officials issued defendant forty-two ordinance violations: twenty-six summonses for prohibited activities and treatment, Nutley Twp., N.J., Animals Code § 217-25, eight summonses for having an unlicensed cat, Nutley Twp., N.J., Animals Code § 217-30, and eight summonses for having an unvaccinated cat, Nutley Twp., N.J., Animals Code § 217-31.

N.J.S.A. 2C:44-1(a)(2), which characterizes the perpetration of criminal acts against such victims as an aggravating factor for sentencing purposes.[2]

Having applied the presumption against admission into the program, the assistant prosecutor determined that defendant "has not and cannot establish sufficient compelling reasons overcoming her presumptive ineligibility" by demonstrating something "extraordinary or unusual [or] idiosyncratic" in her background making her amenable to rehabilitation. See State v. Nwobu, 139 N.J. 236, 252 (1995).

The assistant prosecutor considered a number of factors in reaching her conclusion, including what she described as defendant's "clear pattern of anti-social behavior" evidenced by her "either purposely, knowingly, or recklessly [having] deprived these animals of life sustaining food and water" for an extended period of time. In reaching this conclusion, she relied, in part, on

---

[2] Effective September 1, 2017, Guideline 3(i) was amended to eliminate the presumption against admission to the PTI program for a defendant charged with an offense "deliberately committed with violence or threat of violence against another person[.]" The revised Guideline 3(i) mirrored the text of N.J.S.A. 2C:43-12(b)(2)(a). Effective July 1, 2018, the Supreme Court deleted all of the Rule 3:28 Guidelines and adopted Rules 3:28-1 to -10 which incorporate much of the substance of the Guidelines as they then existed. Defendant's alleged offenses and her application for admission to PTI both took place prior to September 1, 2017. The assistant prosecutor's denial of defendant's application was issued shortly after September 1, 2017, but applied the prior version of Guideline 3(i), which contained the presumption at issue.

photographs of the advanced state of decomposition of the deceased cats. In addition, the assistant prosecutor noted that the police report states that the management of defendant's building received a complaint of a foul odor emanating from defendant's prior apartment, resulting in her relocation. The assistant prosecutor also characterized defendant as a threat to other animals and people, described the alleged crimes as violent, and determined that the need for prosecution outweighed any benefit that defendant and society might derive from supervised treatment. The assistant prosecutor found defendant's age, education, and lack of criminal record as mitigating factors.

Defendant appealed the assistant prosecutor's decision to the Law Division. On February 21, 2018, the trial court issued a written decision reversing the denial of defendant's PTI application. The court determined that the assistant prosecutor misapplied Guideline 3(i), as well as four other factors when denying the application. Specifically, the court noted that Guideline 3(i), as it existed at the time of the offense, created a presumption against admission to the PTI program for defendants alleged to have committed crimes involving the deliberate use of "violence or threat of violence against another person[.]" The court concluded that domestic animals are not persons within the meaning

A-2957-17T1

of the Guideline and, as a result, the presumption against eligibility did not apply to defendant.

The trial court also concluded that the assistant prosecutor incorrectly considered defendant's alleged crimes to be part of a continuing pattern of anti-social behavior. The court found that it was an error for the State to rely on the report of a complaint of a foul odor emanating from defendant's prior apartment as evidence of a pattern of behavior, because the record contained no evidence with respect to what generated the odor on the prior occasion. The court did not, however, address the assistant prosecutor's finding that defendant's alleged criminal acts took place over an extended period of time. This may be explained by the trial court's refusal, despite several requests, to view the photographic evidence depicting cat carcasses decomposed to the point of being full skeletons and feline body parts gnawed from deceased animals strewn on the apartment's floor. These conditions surely did not evolve over a short period of time and belied defendant's claim to have periodically stopped by the apartment to feed the cats or to have arranged for someone else to take care of the cats.

With respect to its refusal to view the photographic evidence, the court stated: the "State appears to be overcome by emotion as the result of the . . . harm" defendant's conduct inflicted on the cats and is "trying to impute a [s]tate

of mind upon [defendant] that is not supported by credible evidence" and that the State's "only purpose" in submitting the photographs "would be to try to influence the [c]ourt to make an emotional decision, the same as had apparently already been done by the State in denying [defendant's] application."

Finally, the court found that the assistant prosecutor failed to consider mitigating factors, including a lack of a documented mental health history and the effect that a criminal record would have on defendant's ability to find employment. The trial court also concluded that the State erroneously found that defendant posed a continuing threat to others because animals are not "others" within the meaning of the PTI statute and Guidelines.

The trial court concluded that the assistant prosecutor's incorrect application of a presumption against eligibility and her erroneous findings with respect to several statutory factors constituted a patent and gross abuse of discretion. The court noted that it "would normally remand the matter back to the prosecutor for reconsideration of [defendant's] application[.]" However, the court stated that it "believes that a remand would result in a rubber stamped denial of the application and controvert the rehabilitative goals of the PTI program." On February 21, 2018, therefore, the trial court entered an order admitting defendant to the PTI program for two years. The court ordered that

8

defendant shall: (1) not own, shelter, or be the primary caretaker for any domestic animal during her supervision; (2) perform 200 hours of community service at a local animal shelter or other appropriate agency; (3) attend psychological counseling; and (4) pay mandatory fines and fees.

This appeal followed, resulting in a stay of the order. R. 2:9-3(d). The State makes the following arguments for our consideration:

> POINT I
>
> THE JUDGE BELOW SUBSTITUTED HIS JUDGMENT FOR THE PROSECUTOR'S WHEN HE ADMITTED DEFENDANT INTO THE PTI PROGRAM OVER THE STATE'S OBJECTION.
>
> A.    PTI & STANDARD OF REVIEW.
>
> B.    THE STATUTORY PRESUMPTION AGAINST ADMISSION INTO PTI FOR DEFENDANTS CHARGED WITH CRIMES INVOLVING "VIOLENCE OR THE THREAT OF VIOLENCE" APPLIES TO ANIMAL CRUELTY CASES, AND IT APPLIES TO THE FACTS OF THIS CASE.
>
> C.    FACTORS (1), (2), (8), AND (9) ALL SUPPORT REJECTION OF DEFENDANT'S PTI APPLICATION.
>
>     i.    FACTORS (1) AND (2) – THE NATURE OF THE OFFENSE AND THE FACTS OF THE CASE.

9

ii. FACTOR (8) – WHETHER DEFENDANT'S CONDUCT CONSTITUTES A PATTERN OF ANTI-SOCIAL BEHAVIOR.

iii. FACTOR (9) - DEFENDANT'S CRIMINAL RECORD AND THE EXTENT TO WHICH SHE MAY PRESENT "A SUBSTANTIAL DANGER TO OTHERS.

D. FACTORS (5) AND (6) ARE INAPPLICABLE TO THIS CASE.

E. EVEN ASSUMING THE PROSECUTOR MISAPPLIED ONE OR MORE FACTORS, HER DECISION WAS NOT A PATENT AND GROSS ABUSE OF DISCRETION.

F. IN THE ALTERNATIVE, THE JUDGE INAPPROPRIATELY ORDERED DEFENDANT INTO PTI OVER THE STATE'S OBJECTION RATHER THAN REMAND THE CASE BACK TO THE PROSECUTOR FOR RECONSIDERATION. FURTHER, THE JUDGE'S COMMENTS REQUIRE THAT ANY FURTHER PROCEEDINGS TAKE PLACE BEFORE A DIFFERENT JUDGE.

## II.

The decision to admit a defendant to PTI is a "quintessentially prosecutorial function." State v. Roseman, 221 N.J. 611, 624 (2015) (quoting State v. Wallace, 146 N.J. 576, 582 (1996)). As a result, judicial review of a prosecutor's decision to deny a defendant admission into the PTI program is "severely limited." State v. Negran, 178 N.J. 73, 82 (2003). "Reviewing courts

A-2957-17T1

must accord the prosecutor 'extreme deference.'" State v. Waters, 439 N.J. Super. 215, 225 (App. Div. 2015) (quoting Nwobu, 139 N.J. at 246). We reverse "only the most egregious examples of injustice and unfairness" in the PTI application process. Nwobu, 139 N.J. at 246 (quoting State v. Kraft, 265 N.J. Super. 106, 111 (App. Div. 1993)). To overturn a rejection of a PTI application, a defendant must "clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion[.]" Wallace, 146 N.J. at 582 (quoting State v. Leonardis, 73 N.J. 360, 382 (1977)). "[W]e review the [trial court's] reversal of the prosecutor's decision de novo." Waters, 439 N.J. Super. at 226.

"PTI was established initially by Rule 3:28 in 1970." Roseman, 221 N.J. at 621. "In 1979, the Legislature . . . establish[ed] PTI as a statewide program pursuant to N.J.S.A. 2C:43-12." Ibid. "Thus, PTI programs are 'governed simultaneously by the Rule and the statute which "generally mirror[]" each other.'" Ibid. (alteration in original) (quoting State v. Watkins, 193 N.J. 507, 517 (2008)).

We begin our analysis with the trial court's conclusion that Guideline 3(i), as it existed at the time of the alleged offenses, did not create a presumption that defendant is ineligible for admission into the PTI program. On the date of the

A-2957-17T1

alleged offenses, the Guideline provided that "[i]f the crime [alleged] was . . . deliberately committed with violence or threat of violence against another person . . . the defendant's application should generally be rejected." We think it too plain to require extended discussion that a cat is not a person within the meaning of Guideline 3(i), as it existed at the time of the alleged offenses.

We recognize that since 1996 the Legislature has expanded criminal liability and increased penalties for abuse of animals. See L. 1996, c. 64 §1 (elevating animal cruelty from a disorderly persons offense); L. 2001, c. 229, §1 (making certain forms of animal cruelty and abuse a fourth-degree crime); L. 2003, c. 232, §1 (making certain forms of animal cruelty and abuse a third-degree crime); L. 2005, c. 105, § 1 (expanding criminal liability to those who indirectly inflict cruelty on an animal). Yet, the Legislature has not bestowed on animals the status of "person" for purposes of criminal liability.

Nor, as the State argues for the first time on appeal, does N.J.S.A. 2C:43-12(b)(2) create a presumption against defendant's admission to the PTI program. The statute provides, in relevant part:

> There shall be a presumption against admission into a program of supervisory treatment for:
>
> (a)     a defendant who was a public officer or employee whose offense involved or touched upon his public office or employment; and

12

(b) a defendant charged with any crime or offense involving domestic violence, as defined in subsection a. of section 3 of P.L. 1991, c. 261 (N.J.S.A. 2C:25-19) if the defendant committed the crime or offense while subject to a temporary or permanent restraining order issued pursuant to the provisions of the "Prevention of Domestic Violence Act of 1991," P.L. 1991, c. 261 (N.J.S.A. 2C:25-17 et al.) or if the crime or offense charged involved violence or the threat of violence.

[N.J.S.A. 2C:43-12(b)(2)(a) to (b).]

To be presumptively ineligible for admission to the PTI program, a defendant must be either: (a) a public officer or employee charged with an offense that involved or touched on his or her public office or employment; or (b) charged with a crime or offense involving domestic violence, if one of two additional conditions are met. A defendant charged with a crime or offense involving domestic violence is presumptively ineligible for admission into the PTI program only if (1) the crime or offense charged was committed while the defendant was subject to a temporary or permanent restraining order, or if (2) the crime or offense charged involved violence or the threat of violence. Defendant is not a public officer or employee and she was not charged with a crime or offense involving domestic violence. She is not, therefore, subject to a presumption against admission to the PTI program.

A-2957-17T1

The State misreads the second condition applicable to defendants charged with a crime or offense involving domestic violence as applying to a defendant charged with any crime or offense involving violence or the threat of violence. The unambiguous structure of the statute, however, creates only two categories of defendants presumed to be ineligible for admission into the PTI program and the conditional phrase following "or if" in the statute modifies the second of those categories: "a defendant charged with any crime or offense involving domestic violence, as defined in subsection a. of section 3 of P.L.1991, c. 261 (C.2C:25-19) . . . ."

Alleged crimes and offenses involving violence, but not involving domestic violence, are addressed in a different provision of the statute. N.J.S.A. 2C:43-12(e)(10) provides that

> [p]rosecutors and program directors shall consider in formulating their recommendation of an applicant's participation in a supervisory treatment program, among others, the following criteria:
>
> . . . .
>
> (10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior[.]

There is, therefore, no statutory presumption against admission into the PTI program for a defendant charged with violent crimes not involving domestic

14

violence. Instead, the violent nature of the alleged crimes and their possible injurious consequences are factors to be considered along with many other factors in the application process.

We, therefore, agree with the trial court's conclusion that the assistant prosecutor erred by applying a presumption against defendant's admission into the PTI program. We find error, however, in the trial court's decision directing defendant be admitted to the program.

In State v. Coursey, 445 N.J. Super. 506, 512 (App. Div. 2016), we held that a prosecutor's erroneous application of a presumption against admission into the PTI program "requires that we reverse the PTI order on appeal and remand . . . to the prosecutor for reconsideration ab initio." "[R]emand to the prosecutor affords an opportunity to apply the standards set forth by the court 'without supplanting the prosecutor's primacy in determining whether [pretrial intervention] is appropriate in individual cases.'" State v. K.S., 220 N.J. 190, 200 (2015) (second alteration in the original) (quoting State v. Dalglish, 86 N.J. 503, 514 (1981)).

We see no basis for the trial court's departure from the holding in Coursey. The record, while evidencing the assistant prosecutor's spirited defense of the denial of defendant's PTI application, does not support the trial court's

conclusion that a remand to the prosecutor would result in a "rubber stamp" of the prior decision.  Nor do we condone the trial court's refusal to view the photographic evidence offered by the State.  The evidence is relevant to disprove defendant's claim to have stopped by the apartment periodically to feed the cats, given the advanced state of decomposition of feline remains, the dismemberment of deceased animals, and other conditions depicted in the photographs.  It is difficult to imagine an accurate review of the assistant prosecutor's denial of defendant's application could be undertaken by a court that refuses to review the evidence on which the assistant prosecutor relied in reaching that decision.  Because the judge who decided this matter has already engaged in weighing the evidence and expressed his opinion on the ability of the prosecutor's office to render a fair decision on defendant's PTI application, we direct that should the matter return to the trial court after remand, any future decision with respect to defendant's application be made by a different judge. See N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 617 (1986).

Reversed and remanded for the prosecutor's reconsideration of defendant's application for admission to the PTI program.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2957-17T1