# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5439-17T4

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

ROBERT SPINELLI,

      Defendant-Respondent.

_____

      Argued February 6, 2019 – Decided August 7, 2019

      Before Judges Fuentes, Accurso and Moynihan.

      On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-05-0690.

      Joie D. Piderit, Assistant Prosecutor, argued the cause for appellant (Andrew C. Carey, Middlesex County Prosecutor, attorney; Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

      Thomas P. Ehrlich argued the cause for respondent (Ehrlich Law Offices, attorneys; Thomas P. Ehrlich, on the brief).

PER CURIAM

Pursuant to Rule 3:28-6(c),[1] the State appeals from the order of the Law Division, Criminal Part enrolling defendant Robert Spinelli into the Pretrial Intervention (PTI) program over the objection of the Middlesex County Prosecutor's Office (MCPO). The State argues defendant did not prove, by clear and convincing evidence, that the prosecutor's decision to reject defendant's PTI application constituted a patent and gross abuse of discretion. We agree with the State's position and reverse.

We derive the following facts from the record the parties developed before the Criminal Part.

I

The Accident

At approximately seven o'clock in the evening on December 13, 2017, a white SUV driven by Eric Johnson was stopped in the northbound lane of Route 27 in the Township of South Brunswick, with its left-turn signal on, indicating

---

[1] At the time defendant applied for admission into PTI, the standards governing his eligibility were codified in Rule 3:28 and related Guidelines. Effective July 1, 2018, the Supreme Court repealed these rules and replaced them with the rules codified in Rule 3:28-1 to -10. However, as the State correctly noted in its appellate brief, because the new rules were not in effect at the time defendant applied for admission into PTI, we are bound to rely "on the version of Rule 3:28 and the accompanying Guidelines and Comments that governed" at that time. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 473 n.4 (2018).

an intent to turn left into the parking lot of a Dunkin Donuts.  Before Johnson started to turn, a silver pickup truck driven by defendant collided into the SUV.  The pickup truck continued to drive without making any attempt to stop at the scene of the accident.  Johnson followed the pickup truck until it stopped at the driveway of an Autotrendz store.  Defendant's fourteen-year-old son was seated in the pickup truck's passenger seat.

South Brunswick Police Officer Jarrid Harpster responded to the scene and questioned both Johnson and defendant about the accident.  Harpster memorialized the parties' statements and his observations of defendant's demeanor in a Drinking and Driving Report.  Johnson told Harpster that defendant "appeared to be intoxicated when he exited the vehicle to speak to him."  In response to Harpster's questions, defendant said he was on his way home in Kendall Park after "he picked his son up from a wrestling match at the high school."  With respect to how the accident occurred, defendant claimed that he was:

> discussing the match with [his son when] . . . he took his eyes off the road to look at his son while speaking to him, and when he glanced back at the road, he noticed a vehicle was stopped in front of him.  He then swerved attempting to avoid a crash, striking the right rear passenger side wheel well and passenger door area.

Defendant told Harpster that he did not stop immediately after the accident because he wanted to find a safe place to park his pickup truck. He denied having drunk any alcoholic beverages before the accident. Harpster noted in his report that while speaking with defendant, he "smelled [an] odor of alcoholic beverage coming from his breath . . . [his] speech was slow, stuttered, and slurred." Harpster also noted defendant's "balance [was] off as he swayed back and forth . . . [and] kept re-adjusting his foot position to gain balance." His eyes were "glassy and watery." Harpster also recorded that defendant had "a large contusion above his right brow from hitting his head on the steering wheel during the crash." He requested the "Monmouth Junction First Aid" squad to respond to the scene and evaluate defendant's injury. Defendant refused medical attention at the scene, but told the first aid responders that he suffered from hypoglycemia.

Based on these preliminary observations, Harpster asked defendant to perform a series of field sobriety tests on a flat, level, blacktop area of the Autotrendz parking lot. In response to Harpster's question, defendant said he did not have any physical disabilities or other health-related problems that would hinder or prevent him from performing any of these physical dexterity tests. Before asking defendant to perform any of these tests, Harpster verbally

described what he wanted defendant to do and physically demonstrated each test in his presence. Harpster asked defendant to perform the heel-to-toe test; one-leg stand test; and the thirty-second time-estimation test.[2] According to Harpster, defendant was unable to perform as instructed all three of these tests.

At this point, Harpster concluded he had probable cause to charge defendant with driving while intoxicated (DWI), N.J.S.A. 39:4-50, and transported him to the South Brunswick police station to administer a breathalyzer test. Harpster read defendant his constitutional rights under Miranda v. Arizona, 384 U.S. 436 (1966), and obtained his written consent to waive these rights. Defendant also consented "to the taking of his breath samples for chemical testing." See N.J.S.A. 39:4-50.2. Defendant's two breath samples showed a blood alcohol content (BAC) of .21 percent, nearly three times the .08 presumptive level of intoxication under N.J.S.A. 39:4-50.

On December 13, 2017, defendant was formally charged with DWI, reckless driving, N.J.S.A. 39:4-96, careless driving, N.J.S.A. 39:4-97, and making an unsafe lane change, N.J.S.A. 39:4-88(b). On December 15, 2017, defendant was also charged with second degree endangering the welfare of a

---

[2] Harpster described in detail how defendant failed to perform each one of these tests. We do not include this aspect of Harpster's report here because it is not germane to the legal issue before us.

A-5439-17T4

child under N.J.S.A. 2C:24-4(a)(2), by driving while intoxicated while his fourteen-year-old son was a passenger, thereby knowingly putting him at risk of harm, making him an abused and neglected child under N.J.S.A. 9:6-8.9(d)(2).[3]

PTI Application

Pursuant to Rule 3:28(h), a defendant must file an application for admission into PTI "at the earliest possible opportunity, including before indictment, but in any event no later than twenty-eight days after indictment." Defendant filed this application for admission into PTI with the Criminal Case Manager (CCM) on February 5, 2018 nearly three months before a Middlesex County grand jury indicted him for second degree endangering the welfare of a child. The CCM probation officer who reviewed defendant's PTI application considered the following factors.

---

[3] Due the nature of this offense, the Division of Child Protection and Permanency (DCPP) was initially involved with defendant and his family. The PTI Recommendation report prepared by the Middlesex County Criminal Case Manager noted that a DCPP representative "ordered" defendant to undergo an intake evaluation with Catholic Charities and referred him to "Open Door," an outpatient substance abuse services program in New Brunswick. In a letter dated June 8, 2018, a Supervisor of Family Services in the State Department of Children and Families informed defendant's wife that they had "completed" their intervention with the family and had "no further concerns." The Supervisor also provided defendant's wife with the Department's hotline telephone number and the telephone numbers of a variety of social services agencies that operate in the community.

Defendant was forty-six years old at the time the accident. He is married and has two teenaged children (twins), a boy and a girl. The fourteen-year-old boy was in the pickup truck at the time of the collision. Defendant graduated from Rutgers University in 1993 with a Bachelor of Science in Sports Management and Exercise Science and attended an undetermined number of graduate classes at the New Jersey Institute of Technology (NJIT), earning fewer than six credits. Defendant told the CCM probation officer he stopped attending NJIT when his wife became pregnant with the twins. He returned to NJIT in 2001 to complete an Environmental Infrastructure and Management course. The CCM verified defendant earned twelve graduate level credits and a Graduate Certificate from NJIT.

Defendant is employed as a Sales Manager with a company in New Brunswick and has supervisory authority over twenty employees. At the time the CCM prepared its PTI assessment report in 2018, defendant had been employed at this company for twenty-one years. He suffers from hypoglycemia and reports that his kidney function may be compromised. Defendant described himself as a "former alcoholic" who "drank alcohol a couple of times per week." He claimed to have been a "binge drinker" who was "sober for two and a half years" before this accident. He told the CCM probation officer that since the

A-5439-17T4

accident, he "actively attends" alcoholics anonymous (AA) meetings, has an AA sponsor, and voluntarily attended graduate study counseling through Rutgers University Psychological Services. Defendant does not have any prior involvement with the criminal justice system. He has two prior DWI convictions, in December 2012, and April 2000.

Defendant admitted he "consumed Vodka prior to the commission of the instant offense . . . [and] was intoxicated." The CCM recommended defendant's admission into PTI based on a combination of public policy considerations and defendant's personal characteristics. According to the CCM: (i) defendant's enrollment into PTI would relieve the overburdened criminal calendars and allow the prosecutor to devote more resources to address serious criminal cases; (ii) defendant is unlikely to commit another offense; (iii) defendant was cooperative with the CCM and the DCPP and has participated in counseling services; (iv) defendant's first DWI occurred eighteen years ago and his second in 2012; and (v) the child victim was not injured. Pursuant to Guideline 3(i), defendant is presumptively ineligible for admission into PTI because he is charged with a second degree crime. However, the CCM did not consider this factor in assessing defendant's eligibility for PTI because "to date he has not been indicted."

The CCM recommended defendant's admission into PTI provided he: (1) remain gainfully employed; (2) report as directed; (3) remain offense free; (4) comply with the DCPP[4]; (5) continue to attend AA meetings; (6) continue outpatient treatment until medically discharged; (7) pay restitution to Johnson for any damage to his vehicle; and (8) abide by a potential court-ordered suspension of his driver's license.

In a letter dated March 13, 2018, addressed to defense counsel, the Assistant Prosecutor assigned to review defendant's PTI application advised counsel that after considering the seventeen factors in N.J.S.A. 2C:43-12(e) and the Guidelines appurtenant to Rule 3:28, the MCPO had decided to reject defendant's application. Specifically, the MCPO found: (1) insufficient grounds to overcome the presumption against admission into PTI for a defendant charged with a second degree offense; (2) the particular facts of the case; (3) the motivation and age of defendant; and (4) the public need to prosecute defendant for this offense outweighs the value of supervisory treatment. Although there were a number of factors that weighed in favor of admitting defendant into PTI, the MCPO found holding defendant accountable for this offense through the

---

[4] By this time, the DCPP had completed its investigation of this incident and terminated its involvement with defendant's family.

criminal justice system would better serve the public policy of deterrence of DWI, especially in a case in which the intoxicated driver exposed his own minor son to serious harm by having him as a passenger in the vehicle.

Defendant appealed the MCPO's rejection of his PTI application to the Criminal Part. In his brief in support of his PTI application before the Criminal Part, defense counsel described defendant's activity preceding the accident as follows:

> On the day of this offense, Mr. Spinelli attended a work holiday party at a local restaurant and stayed for an hour and a half at which time he consumed a few mixed drinks over his better judgment. On his way home he picked up his son from wrestling practice.

Although he conceded the MCPO had considered all of the relevant factors in N.J.S.A. 2C:43-12(e), defendant argued the prosecutor had unduly focused on the negative factors and failed to give "proper weight to . . . defendant's character traits and rehabilitative efforts." Specifically, defendant argued the prosecutor's reliance on the nature of the offense and the particular facts of the case as factors that support the rejection of defendant's PTI application "shows that the decision was arbitrary and capricious." Although he was charged with second degree endangering the welfare of his own teenaged son, defendant emphasized that the boy was not injured and "agrees to his father

being let into PTI." Defendant also argued that the facts of the case "actually weigh in favor" of admitting him into PTI.

Although he was convicted of his second DWI in 2012, defendant claimed he had "abstained from intoxicating substances for many years but relapsed after the death of his mother and the holiday season, as many people do." (Emphasis added). According to defendant, society would be better served by his admission into PTI "where he can learn the lesson from [his] mistake and return to work and care for his family." Finally, despite this being his third DWI conviction, defendant argues there is "simply nothing in the record to justify the prosecutor's reliance" on a pattern of anti-social behavior.

The MCPO did not file a formal brief or memorandum of law before the Criminal Part. In a letter addressed to defense counsel and copied to the trial judge, the MCPO restated its reasons for rejecting defendant's PTI application. The matter came before the trial court on July 20, 2018. The transcript shows the judge acknowledged the receipt of the parties' written submissions and stated: "All right. If nothing else needs to be said, I'll give you my decision."[5]

---

[5] Because the attorneys did not object, we infer they opted to waive oral argument. We nevertheless emphasize that "[o]ral advocacy is a fundamental aspect of our criminal justice system and should be encouraged, preserved, and protected." State v. Parker, 459 N.J. Super. 26, 31 (App. Div. 2019).

After reviewing the salient facts in this case, the judge acknowledged that a defendant seeking to overturn a prosecutor's rejection of an application to be admitted into PTI must clearly and convincingly establish that the decision was based on a patent and gross abuse of discretion. The judge also noted that the prosecutor had considered and applied the seventeen factors codified in N.J.S.A. 2C:43-12(e) and the Guidelines attendant to Rule 3:28. After reviewing the record of the accident prepared by Officer Harpster, the judge made the following comment:

> Now, the State's version of defendant's behavior at the scene is somewhat contradicted by the police report provided by the defense on the date of the incident. While the defendant may not have initially been forthcoming and may have lied to the officer when asked initially if he had been drinking, he did ultimately admit that he had been drinking, it's not uncommon for people in that situation to not be completely forthcoming but he ultimately did reveal that he was drinking. And the officer noted in his police report that the defendant was polite. He was calm and he was cooperative.
>
> The defendant's use of alcohol is the root cause of his criminal charge and it seems to me that with proper supervision and in light of the rehabilitative nature of PTI, defendant can potentially overcome these troubles.

The judge's next significant comment came in analyzing the factor that addresses the nature of the crime and whether the value of supervisory treatment

would be outweighed by the public need for prosecution. The judge noted that even if defendant was admitted into PTI, he would not avoid the Title 39 sanctions imposed by the Legislature for his third DWI conviction. Thus, in the judge's view, society's interests in deterring drunk driving would be sufficiently served "because inherent in that offense, there's [a] 180 day jail sentence."[6]

With respect to the charge of second degree endangering the welfare of child, the judge found:

> The victim in this case, his child expressly wishes that the defendant not be prosecuted and that he be admitted into the PTI program. And frankly society has an interest in permitting or allowing a father with obligations with no past criminal history into a diversionary program where, with the support of his family to address his drinking problems so that he can remain a productive member of society, contributing to his family, contributing to his community.

Finally, citing State v. Caliguiri, 158 N.J. 28 (1999), the judge made the following comments with respect to the applicability of the presumption against admission into PTI for a defendant charged with a first or second degree crime under Guideline 3(i):

---

[6] We are compelled to note that a sentence imposed for a third DWI conviction under N.J.S.A. 39:4-50(a)(3) authorizes the court to allow defendant so serve 90 of the 180-day sentence "participating in a drug or alcohol inpatient rehabilitation program approved by the Intoxicated Driver Resource Center."

A-5439-17T4

A categorical exclusion from PTI based solely on the nature of the offense without consideration of the individual defendant is patently and grossly arbitrary according to Caliguiri. In that case, the Middlesex County [P]rosecutor's rejection of a defendant from PTI for assault by auto while intoxicated was overturned where the prosecutor failed to consider individual facts about the defendant.

In furtherance of this line of reasoning, the judge held that the MCPO's determination here "seems no different than the prosecutor's determination in [State v. Caliguiri]." The judge thus found that in his "view" denying defendant's application "would clearly subvert the goals of PTI . . . ." Based on these findings, the judge concluded that the prosecutor's rejection of defendant's PTI application constituted "a clear error of judgment which has invariably resulted in a patent and gross abuse of discretion."

II

We start our analysis by noting that our Supreme Court recently overruled the holding in Caliguiri, which the trial judge viewed as dispositive of the issue before us. In State v. Johnson, 238 N.J. 119, 122-23 (2019), the Court held that "the presumption against PTI for second-degree offenders cannot be applied to N.J.S.A. 2C:35-7(a) offenders." The Johnson Court also reaffirmed, however, that "'PTI is essentially an extension of the charging decision, therefore the decision to grant or deny PTI is a' 'quintessentially prosecutorial function.'" Id.

at 128 (first quoting State v. Roseman, 221 N.J. 611, 624 (2015); then quoting State v. Wallace, 146 N.J. 576, 582 (1996)). A brief recitation of the salient facts in this case shows the trial court did not adhere to this standard of review.

When defendant made a conscious choice to pick up his fourteen-year-old son from school, he had .21 BAC level. This level of intoxication made him a clear danger to any motorists or pedestrians he encountered. Furthermore, and mostly disturbingly, the most vulnerable person at the time was his own teenage son. Officer Harpster's police report gives us an indication of the degree of his disorientation and extent of his cognitive impairment:

> [Defendant] looked over to talk to his son, when he glanced back at the road, he noticed [a car] was stopped attempting to turn into Dunkin Donuts and made evasive [maneuvers] by swerving right to avoid a crash. This caused him to impact the rear passenger wheel well and side door of [the car].

The MCPO expressly noted these disturbing facts as a basis for finding factor N.J.S.A. 2C:43-12(e)(14):

> The public need for prosecution outweighs the value of supervisory treatment in this case. The seriousness of the offense would be depreciated by admission into PTI. Defendant is someone who drives drunk, and this is the third time he has been arrested for doing so. His teenage son was in the car and he caused an accident.

A-5439-17T4

Defendant was forty-six years old at the time of this accident. His decision to drive while intoxicated that day was not uncharacteristic or an aberrational lapse in judgment. He is an alcoholic who had been convicted of driving while impaired on two prior occasions. His first DWI conviction occurred in 2000 when he was twenty-nine years old. He was forty-one years old when he was convicted for DWI a second time in 2012. In this third DWI charge, defendant drove his pickup truck with a BAC nearly three times the presumptive level of intoxication; his fourteen-year-old son was seated beside him; and he crashed into a car that had stopped to make a lawful turn. Defendant did not stop at the scene. He continued driving on Route 27 while the driver of the car he had just crashed into gave chase.

Based on these allegations, in addition to the Title 39 violations, the State charged defendant with second degree endangering the welfare of a child, a crime that carries a presumption of incarceration of no less than five years in State prison. In reaching the conclusion to reject defendant's PTI application, the MCPO noted: "[W]hile there is no indication of any intentional violence, [defendant] nonetheless presents a substantial danger to himself and others."

The Supreme Court made clear in Roseman that "the prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of

deference. Trial courts may overrule a prosecutor's decision to accept or reject a PTI application only when the circumstances 'clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion.'" 221 N.J. at 624-25 (quoting Wallace, 146 N.J. at 582). Our review of the record here leaves no doubt that the trial court's decision to overturn the MCPO's rejection of defendant's PTI application was not based on a proper application of this enhanced deferential standard of review.

Here, the trial court engaged in a de novo examination of the record, through which it usurped the prosecutor's charging authority to reach what the court "viewed" as the right result. This approach is irreconcilable with the role the judiciary performs in this context. See State v. Rizzitello, 447 N.J. Super. 301, 314 (App. Div. 2016). Defendant did not present sufficient evidence to overcome the presumption against admission or establish that the prosecutor's rejection constituted "a patent and gross abuse of discretion." Guided by this standard of review, we discern no legal basis to interfere with the prosecutor's rejection.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5439-17T4